## SHUMATE *v.* CHENAULT *et al.*

1. Where an equitable suit, brought to recover lands and to cancel deeds thereto alleged to have been fraudulently obtained by defendants, was settled by a consent verdict and decree, duly rendered in the case, whereby the lands were divided in a certain and definite way among the parties

and commissioners were appointed to have the land surveyed and to make a division thereof between the parties in accordance with the stipulations of the verdict and decree, a return of a majority of such commissioners, showing the surveys and partition made of the various tracts in dispute, was not conclusive upon the parties litigant, and either party had the right to file objections to such return. It was, therefore, error for the court to strike objections duly filed by either party, setting forth facts which, if true, clearly indicated that the report of the commissioners was the result of either fraud or mistake depriving the objecting party of rights to which he was clearly entitled under the verdict and decree.

2. Even if in such a case the commissioners thus appointed were empowered with the authority and duty of determining all matters of dispute between the parties touching the land-lines and boundaries of the tracts in dispute, it was nevertheless error to overrule the objections of a party, setting forth facts indicating that the lines and boundaries around a certain tract were established contrary to all the evidence before them upon the subject, and in such a way as to work an unconscientious advantage to the opposite party and deprive the objector of valuable property to which he was entitled under the verdict and decree.

Argued June 8, — Decided July 25, 1899.

Objections to return of commissioners.　Before Judge Reese. Lincoln superior court.　October term, 1898.

*William M. Howard* and *John T. West*, for plaintiff.

LEWIS, J.　Mary A. Shumate filed her equitable petition, in the superior court of Lincoln county, against her brothers, John O. Chenault and A. F. Chenault. She alleged, that on May 16, 1868, her father conveyed to her by deed for a valuable consideration two tracts of land (describing each particularly), one known as the Bussey place and the other as the Bell place, and also conveyed to her another tract of land containing 140 acres, known as part of the Sutton place dower tract, and she went into possession of said land and held the same until August 12, 1890; that on August 5, 1870, one Walton conveyed to her and A. F. Chenault, one of the defendants, a certain tract of land containing 507 acres, more or less, describing the same by giving the names of the adjoining landowners; that she and her brother went into possession of said land under the deed, and held the same until August 12, 1890; that she was a single woman until the date last mentioned, and her two brothers, learning that she was about to marry, conspired

together to deprive her of the aforesaid property; that in furtherance of their conspiracy they falsely and fraudulently told her that their father was deeply in debt when he made her the deeds to the three first-mentioned tracts, that they were void, and that her title and interest in the 507 acres of the second mentioned tract was also void. They represented to her that she could not hold any of the lands, and that unless she deeded to A. F. Chenault her half-interest in the 507 acres, and to J. O. Chenault the Sutton dower tract, they would by force prevent her marriage. They used violent and abusive language to her, and petitioner alleged that they were violent and dangerous men. As a result of such representations and conduct, on August 12, 1890, she deeded to A. F. Chenault one half-interest in the 507 acre tract, and to J. O. Chenault the Sutton dower tract. The defendants on their part promised to make her a deed to 25 acres adjoining the Bell and Bussey lands, which promise they have never complied with, but on the contrary they are trying to take a portion of said place from her by claiming the line to be different from what it is. Among other things she prays for a cancellation of the deeds given by her to her said brothers, and for general relief. The defendants denied their liability and the allegation of improper and fraudulent conduct, and claimed title to the lands. A settlement of the case was agreed upon between the parties, a jury empaneled at a regular term of court, and the following consent verdict was taken: "The parties making equal concessions to each other in order to settle the matter involved in the present suit, and agreeing thereto, we, the jury, find: (1) That A. F. Chenault make and deliver to Mary Ann Shumate a fee-simple deed to enough land adjoining the 'Bell and Bussey' tracts to make, together with the lands in said tracts, three hundred acres in one continuous body. (2) That the boundary of said Bussey tract and lands of A. F. Chenault adjacent thereto is a branch. (3) That the true line between the Bell tract and adjacent lands of A. F. Chenault is a skirt of woods. (4) That the Walton or Mahoney tract of land be valued in money, and that one fourth of said land according to value be cut off to said Mary Ann Shumate as her property absolutely. (5) That

the plaintiff pay one half the costs of the suit, and the defend-
ants pay one half thereof. (6) That the plaintiff select one
commissioner, the defendants one, and these two commissioners
select a third, and in the event either party shall fail within
thirty days herefrom to exercise the right of selection, then the
clerk of superior court of said county shall select a commis-
sioner for said purpose for the party so failing. The duty of
these commissioners shall be to cut off to Mary Ann Shumate
the lands adjoining the Bell and Bussey tracts, so as to make
three hundred acres in a compact body, and connecting said
two tracts. They shall also value the said Walton and Mahoney
tract of land and divide it as herewithin provided ; and when
said division has been made, A. F. Chenault shall make and
deliver to Mary Ann Shumate a fee-simple deed thereto in full
settlement and satisfaction of all claims he may have to any
part of said Walton and Mahoney tract of land. (7) The deed
made by Mary Ann Shumate to Jno. O. Chenault to the Sut-
ton dower tract is hereby confirmed as a valid conveyance to
him. (8) The cost of said commissioners shall be equally
borne by plaintiff and defendants." This verdict was signed by
the foreman of the jury, and was made the judgment of the
court. By the Walton and Mahoney tract mentioned in the
verdict is meant the 507 acres, more or less, described in the
petition. In accordance with this verdict the three commis-
sioners were appointed, two of whom made the following re-
port: "We find by survey 124 acres in Bussey place; we find
by survey 201 in Bell place ; we cut twenty-five (25) acres from
Bell place to reduce to three hundred acres both Bussey and Bell
place. We find by survey two hundred and fifty-eight acres
in Walton or Mahoney place. We set apart to Mrs. Mary A.
Shumate sixty acres as one fourth in value of said two hundred
and fifty-eight acres." Plats of these lands were attached to the
report, from which it appears that a plat representing the Wal-
ton and Mahoney place contained only 258 acres, instead of
507 acres as alleged in the petition and not denied in the an-
swer. Off of this tract of 258 acres there was a plat of about
one fourth thereof, that is sixty acres, cut off by the commis-
sioners for the plaintiff.

It further appears from the record that the land added to the other two tracts was not added in such a way as to make them one continuous body, as required by the verdict. There was also filed what is termed a "minority report" by the other commissioner, protesting against the return of the majority of the commissioners. This report goes into detail, setting forth facts showing error that was made in the survey, and has attached to it a plat of the lands, from which it appears that what this commissioner claims to be the Walton and Mahoney tract contains about 500 acres, or about the number designated in the pleadings. The plaintiff, Mary Ann Shumate, filed her objections to the return of the majority of the commissioners, indorsing the return made by the remaining one, and complaining, first, that the report of the majority was contrary to the verdict and decree, in that the land cut off did not, together with the Bell and Bussey places, make one continuous body of land of 300 acres. It was further objected that when the commissioners went to divide the Mahoney place, instead of getting the true line of said place (the same containing over 500 acres), they adopted an arbitrary line as pointed out by one of the defendants, and surveyed a tract of land as being the Walton place which contains only 258 acres, when as a matter of fact said place contains over 500 acres; that in failing to include in the Walton place all of the lands belonging to it, plaintiff would thus get only 60 acres of land in the Mahoney place, whereas she is entitled to over 125 acres. The plaintiff attached to her objection plats of what she claimed was the correct representation of the lines in controversy. It was further contended by the petitioner in her objection, that all the deeds to the tract of land known as the Walton or Mahoney place called for over 500 acres; that this land is bounded on one side entirely by what is known as the home place, which belongs to the defendants; that whatever shortage there might be in the Walton place would accrue to the defendants by increasing the number of acres belonging to their home place; that the defendants had never before claimed that the dividing line between the home place and the Walton place was located as established by the majority of the commissioners; that the de-

fendant John O. Chenault always expressed an ignorance as to the line, and that the other defendant had frequently pointed out the line as running where plaintiff contended the line should be run; that all the disinterested witnesses and old citizens concurred in placing the line where plaintiff contended it should be placed; that the line established by the commissioners was a purely arbitrary line, there being no natural landmarks or surveys showing that it was where they placed it, and it was run simply on the arbitrary dictation of the defendants. It was further alleged in the objection, that the majority of the commissioners were not themselves satisfied with the line which they ran between these two places, and so expressed themselves when they ran it; when the defendants, seeing that they could not longer deceive the commissioners, forbade them from entering upon the land farther towards the home place, to run the correct line, claiming that they would be trespassers if they so did, and thus prevented the commissioners from running the line as they desired. It is prayed, therefore, that the report be rejected, and that the commissioners be required to survey the land as directed by the court. The exceptions filed also complained that the lines run for the Bussey and Bell places were not correctly returned, and plats of those places were likewise attached to the objections, claiming to represent the correct survey thereof. The allegations in the objection are quite voluminous, and contain many other recitals of facts; but the above is amply sufficient for the purpose of throwing light upon the issues involved in this case. It seems that one of the defendants, A. F. Chenault, died pending the litigation, and his wife, O. M. Chenault, became administratrix of his estate. She likewise filed objections to the report of the majority of the commissioners, indorsing, in substance, what was contended for by the plaintiff, as well as the protest or minority report filed by the other commissioner. When the objections were presented to the judge of the superior court, he granted an order directing that enough land be cut off to the plaintiff from lands adjoining the Bell and Bussey tracts to make 300 acres in a compact body and connecting the two tracts; and he set aside the return of the commissioners as to the Bell and

Bussey tracts, and directed them to resurvey the same in accordance with the verdict and decree. As to the other place, known as the Walton or Mahoney place, he passed the following order: "Nothing appearing in the report of the majority of the commissioners by which the court can determine whether they complied with the order of the court in dividing the Walton or Mahoney tract, the court declines to consider the minority report made by commissioner S. C. Butler, or the exception to the returns of the majority of the commissioners made by plaintiff Mary Ann Shumate, or by the answer of O. M. Chenault, administratrix of A. F. Chenault, or any of the questions raised by said minority report or the exceptions of plaintiff or the answer of O. M. Chenault, administratrix of A. F. Chenault, either as to what are the proper lines in the Walton place or Bussey or Bell places." To this judgment the plaintiff excepted.

We can not imagine upon what principle the court based its decision, in the main entirely overruling the objections filed by the plaintiff to the report of the commissioners appointed to divide these lands. The reason assigned in the order is, that nothing appeared in the report of the majority of the commissioners by which the court could determine whether they complied with the order of the court in dividing the Mahoney tract. The court seems to have been under the impression that, unless this report showed some error or defect on its face, he could not entertain any exceptions thereto. The question is, whether the exceptions filed by the opposing party contained any statement of facts showing that the report was incorrect and not in accordance with the verdict and decree. It not only shows such facts, but states them fully; and if its allegations are true, the report of the majority of the commissioners was not only inaccurate, but absolutely void, the result, not simply of an egregious mistake or blunder working unconscionable advantage to one side and injury to the other, but of a positive fraud perpetrated by one of the defendants. In the first place it showed upon its face a strong suspicion that some mistake was made in the survey of a part of these lands, especially that of the larger tract. The petition declared that this tract

contained 507 acres, more or less, and described it by adjacent landowners. No issue whatever was made in the pleadings concerning the extent of this tract, and it was not denied by the defendants in their plea that it contained the number of acres alleged in the petition. The return of the commissioners had attached to it a plat purporting to represent this tract, which contained only about one half of the number of acres that the parties evidently thought were in it when the one filed her petition and the others their answer. Among the many allegations in the objection is one that the commissioners ignored the description of this land as to the number of acres in all the deeds thereto, ignored all the proof as to where the line ran, were not satisfied with their survey, and finally made the plat returned under threats from one of the defendants that he would hold them as trespassers if they located it elsewhere. There is no award of arbitrators agreed upon by parties to settle their differences, no return of processioners appointed to divide land among tenants in common,—not even the judgment of a court, however extensive its jurisdiction, that could stand the test of such an attack. It doubtless never occurred even to the parties themselves that there would ever be any serious dispute about where the line ran when this consent verdict and judgment was had; and hence there is nothing contained in the verdict or the settlement between the parties that looks to giving the commissioners the right to settle such dispute and to arbitrate and decide between the parties any material difference that might arise on the survey of the lands touching their boundary. But even conceding that plenary power was given them for this purpose; under the facts alleged in the exceptions, if they be true, such authority was grossly abused by the commissioners, and would be set aside by any court of equity. We do not mean to say, of course, that it was the duty of the court to set aside the report entirely, merely on the allegations in plaintiff's exceptions, even though the administratrix of one of the defendants, who was equally interested with the defendants as an heir at law of her deceased husband, seems to have been so shocked at the return as to file her own protest against its being received and adopted by the

court. The exceptions present issues of fact. If they are admitted by the defendants (and one of them has admitted them), it will necessarily follow that the return of the commissioners should not be adopted. We think, however, that the defendant has the right to join issue with the allegations made by the exceptions, and that if such is done the proper course to pursue would be to submit all the issues of fact thus raised, under proper instructions from the court, to a jury. There was a clear right to attack this report, so far as the accuracy of the survey of the several tracts was concerned; and this attack having been made in an equitable proceeding before a court having full power to grant relief either of a legal or equitable nature, we think the court erred in overruling the exceptions filed and thus depriving one of the parties litigant of any redress whatever to have remedied the manifest wrongs of which she complains. We know of no law, either, that prevents one of two codefendants from filing her exceptions to a report, though in her favor, the exceptions practically admitting the truth of the allegations made by the plaintiff. Such exceptions by a defendant might be considered as in the nature of a confession of judgment, which any person has the right to make in open court.

*Judgment reversed.    All the Justices concurring.*