DA 10-0647

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2011 MT 295

IN RE THE MARRIAGE OF:

ROBIN J. CINI,

   Petitioner and Appellee,

 and

NIGEL J. CINI

   Respondent and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DR 08-483 (A)
Honorable Ted O. Lympus, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     Nigel J. Cini, self-represented; Kalispell, Montana

   For Appellee:

     Sean R. Gilchrist; Johnson-Gilchrist Law Firm; Whitefish, Montana

     James Henry Cossitt; Kalispell, Montana

        Submitted on Briefs: October 12, 2011

           Decided: November 29, 2011

Filed:

     _____
        Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Nigel Cini (Nigel) appeals the Eleventh Judicial District Court's order enforcing a property settlement agreement, holding Nigel in contempt, and awarding attorney's fees to Robin Lyon-Cini (Robin).  We affirm the District Court.  We consider the following issues:

¶2     *1.   Whether the District Court erred in refusing to send the dispute to arbitration.*

¶3     *2.  Whether the District Court erred in holding Nigel in contempt.*

¶4     *3.  Whether the trial judge should have been removed for demonstrating bias against Nigel.*

¶5     *4.  Whether the District Court erred by denying Nigel due process.*

¶6     *5.  Whether the District Court erred in awarding attorney's fees to Robin.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶7     Nigel and Robin were married for eight years.  In August 2008, Robin filed a Petition for Legal Separation.  On July 11, 2009, Nigel and Robin voluntarily entered into a Property Settlement Agreement (PSA).  The PSA listed the assets and liabilities each party was to receive along with specific methods of enforcement to ensure the distributions remained fair and equitable.  Nigel received two separate real property interests while Robin took two condominiums and a vacant lot.  The parties also owned two corporations: Kangaroo Brew, Inc., and Down Under Distributing, Inc.  Pursuant to the PSA, Robin transferred all of her interest in both businesses to Nigel in exchange for Nigel executing a promissory note to Robin for $250,000.  Nigel was to make monthly payments of $3,000 on the note with a balloon payment of the balance after eighteen

2

months. Robin was required to relinquish all of her ownership interest in both businesses to Nigel; however, she was entitled to accounting information of either business upon reasonable request. The parties appointed Mel Sheeran (Sheeran) to serve as a receiver throughout the transition, assisting Nigel in the financial aspects of the business and serving as an intermediary between Robin and Nigel.

¶8 Soon after signing the PSA, Robin requested financial documentation for both Kangaroo Brew, Inc., and Down Under Distributing, Inc., but it was never provided. She began receiving numerous telephone calls from creditors and employees regarding delinquent accounts and unpaid wages. Robin became concerned about the management of the businesses and the impacts on her credit rating and on Nigel's ability to satisfy his monetary obligations under the PSA.

¶9 On November 6, 2009, after several attempts to obtain Nigel's compliance with the PSA, Robin filed a Motion to Approve and Enforce the PSA, for Contempt, and for Attorney's Fees. The court subsequently issued an Order to Show Cause on the matter and set a hearing for December 1, 2009. That hearing would later be continued until March 2010. On December 11, 2009, Sheeran sent a letter to the court indicating Nigel was "sabotaging [his] efforts" and acting in a manner that was "disruptive to the [b]usinesses" by "intimidating and threatening anyone who does not agree with him" and "[n]ot showing up for responsibilities or appointments."

¶10 On January 6, 2010, the parties entered and filed a stipulated agreement with the court under which Robin would assume managerial and operational control of the businesses and Nigel would "not interfere in any way" with Robin's control. Two days

3

later, the District Court entered a Decree of Dissolution in which the court specifically incorporated the agreement. On that same day, Nigel's attorney filed a Motion for Leave to Withdraw as Counsel. The court granted the motion and Nigel chose to represent himself throughout the remainder of the litigation.

¶11 Due to Nigel's continued noncompliance, Robin filed a Motion for Ex Parte Relief which the court granted on January 20, 2010. Pursuant to the order, Robin was provided managerial and operational control of the businesses until a hearing on her previous motion to enforce the PSA. The court further ordered Nigel to immediately provide Robin with full and complete access to the businesses' accounts and financial information, and to immediately return possession of all the business assets.

¶12 Nigel remained undeterred by the court's order. He had all of the businesses' mail directed to his personal residence, contacted vendors and customers to have payments made to him personally, and refused to provide Robin with passwords to operate the businesses' computer systems. Nigel also failed to return the business assets and, instead, sold them and refused to provide Robin with the proceeds. Based on Nigel's refusal to comply with the court's orders, Robin was forced to improvise to continue the operations of the businesses and to pay vendors and creditors. Despite her negotiation of payment plans and other efforts to save the businesses, Robin ultimately was forced to file a Petition for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the District of Montana.

¶13 On March 10 and 15, 2010, the District Court held a hearing on Robin's Motion to Approve and Enforce the PSA, for Contempt, and for Attorney's Fees. On April 20,

4

2010, Nigel filed a Motion to Dismiss the Judge for Bias. The court denied that motion as untimely and also because it failed to allege facts showing personal bias. On October 15, 2010, the court entered its Findings of Fact, Conclusions of Law, and Order. The court found Nigel had maliciously interfered with Robin's diligent efforts to try to save the businesses from financial ruin and was in default of the PSA requirements. The court awarded Robin sole possession of Kangaroo Brew, Inc., and ordered Nigel to execute the appropriate property transfers immediately. Nigel retained possession of Down Under Distributing, Inc., but was ordered to pay Robin the receiver fees he had accumulated during his operation of Kangaroo Brew, Inc. The court also ordered Nigel to pay Robin's attorney's fees and costs.

¶14    Nigel appealed the court's order and we stayed review pending resolution of the bankruptcy matter. The bankruptcy court modified its stay to allow this appeal to proceed and we now address the numerous issues Nigel raised in his brief.

## STANDARD OF REVIEW

¶15    We apply de novo review to a district court's denial of a motion to compel arbitration. *Gordon v. Kuzara*, 2010 MT 275, ¶ 5, 358 Mont. 432, 245 P.3d 37. Likewise, plenary review is applied to constitutional questions, such as an alleged violation of the right to due process. *In re Mental Health of T.J.F.*, 2011 MT 28, ¶ 16, 359 Mont. 213, 248 P.3d 804. We review for abuse of discretion a district court's grant of attorney's fees. *In re Marriage of Gorton*, 2008 MT 123, ¶ 45, 342 Mont. 537, 182 P.3d 746. Our review of a family law contempt order is limited to determining whether

5

the district court "acted within its jurisdiction and whether the evidence supports the findings." *In re Marriage of Sullivan*, 258 Mont. 531, 539-40, 853 P.2d 1194, 1200.

## DISCUSSION

¶16  ***1.   Whether the District Court erred in refusing to send the dispute to arbitration.***

¶17  Nigel claims this dispute should have been resolved in arbitration rather than by the District Court.  He relies on the arbitration clause located in the parties' Operating Agreement for the businesses that was attached to the PSA.  That language, however, applied only to controversies "arising out of or relating to this Agreement . . . ." Enforcement of the PSA, not the provisions of the Operating Agreement, was at issue in Robin's motion filed with the District Court. The PSA expressly provided for judicial enforcement of its provisions:

> 17.  **Enforcement.**  The Court shall be requested to approve this Agreement as fair and equitable, and to incorporate this Agreement into any Decree of Dissolution of the parties, and to specify that it shall be enforceable through execution, contempt citation, and/or by the remedies provided by law for specific performance or breach of contract.

The District Court's decree of January 8, 2010 incorporated the PSA and specifically stated, "[a]ny failure on the part of either party to comply with the terms of this Decree, including the . . . [PSA] . . . may result in the Court issuing an Order to Show Cause why such party should not be held in contempt of the Court."  Based on the specific language of the PSA and the District Court's incorporation of that agreement, the District Court did not err in refusing to send the dispute to arbitration.

¶18    ***2. Whether the District Court erred in holding Nigel in contempt.***

¶19    At the outset, we note contempt orders by a district court are final and not reviewable by this Court unless they are derived from a family law proceeding and "the judgment or order appealed from includes an ancillary order that affects the substantial rights of the parties involved." Section 3-1-523, MCA, Mont. R. App. P. 6(3)(j). In *In re Marriage of Stevens*, 2011 MT 124, ¶ 15, 360 Mont. 494, 255 P.3d 154, we reviewed the appeal of such a proceeding where the order affected the appellant's right to possess and hold title to a vehicle. Since the District Court's order affects Nigel's ownership right in Kangaroo Brew, Inc., we will proceed to analyze his claim.

¶20    Aside from Nigel's arbitration argument, which we have found to be without merit, he raises no challenge to the District Court's jurisdiction. Accordingly, we will only address whether the court's findings were supported by the evidence. The court specifically listed nine violations of the PSA, including Nigel's failure to provide accounting information to Robin, failure to remove Robin's name from all liabilities associated with the businesses, failure to obtain Sheeran's and Robin's signatures prior to taking cash from either business, failure to make monthly business payments prior to receiving his salary, failure to issue a promissory note to Robin, and his failure to allow Robin to reclaim possession of the businesses after Nigel's default on payments. While Nigel disagrees with many aspects of the District Court's order, the record demonstrates there was substantial evidence to support the court's findings. Nigel's argument that it was the receiver's duty to fulfill the business operation and transfer requirements of the PSA is unavailing. Nigel stipulated to the PSA and was bound by its terms to ensure

7

compliance with its requirements. The District Court's findings are supported by substantial evidence and it committed no error in finding Nigel in contempt.

¶21 **3.** ***Whether the trial judge should have been removed for demonstrating bias against Nigel.***

¶22 Nigel contends the trial judge was biased against him and should not have presided over this action. Section 3-1-805(1)(a), MCA, requires a party seeking to disqualify a judge for bias to file an affidavit showing personal bias or prejudice "more than thirty (30) days before the date set for hearing or trial." Nigel did not file a motion to disqualify the judge until over a month after the hearing had concluded; therefore, his motion was untimely. Moreover, after reviewing the transcript of the hearings, we conclude, contrary to Nigel's assertions, that the court was patient, fair, and considerate to Nigel, perhaps even beyond what was warranted by the circumstances and Nigel's behavior. The District Court simply advised Nigel to make efficient use of his time as he already had exceeded what was allotted to him and continued to discuss matters irrelevant to the proceedings. The court admitted nearly all of Nigel's exhibits and those that were denied were either duplicative of Robin's or inadmissible for lack of foundation or hearsay. Finally, the court confined its consideration and order to matters pertaining to enforcement of the PSA. To the extent Nigel was ill-equipped to rebut the evidence Robin presented, it was not due to bias by the District Court. That the court made rulings adverse to Nigel's position does not establish bias. Section 3-1-805(1)(b), MCA.

8

¶23    *4. Whether the District Court erred by denying Nigel due process.*

¶24    Nigel asserts he was denied due process of the law, although his precise contention in this regard is difficult to discern. Nigel advances several instances which he believes constituted error by the District Court; however, he failed to raise his concerns before that court. "[W]e will not put a district court in error for failing to address an issue or an argument that was not made before it." *State v. Payne*, 2011 MT 35, ¶ 39, 359 Mont. 270, 248 P.3d 842.

¶25    The only objection Nigel raised at trial was when Robin began discussing how she had never been given access to the bank account for Kangaroo Brew, Inc. Nigel stated, "this has no relevance to the original contempt of court." The court overruled the objection and explained, "we're not dealing with just contempt of court, we're dealing with enforcement of the Property Settlement Agreement." Nigel's objection properly was overruled. Robin's November 2009 motion sought numerous remedies from the court, including enforcement of the PSA and finding Nigel in contempt. By the time her motion was heard, over four months had passed. During that time, Nigel persisted in his noncompliance with the PSA and refused to comply with additional orders issued by the District Court. Robin's testimony was necessary for the District Court to tailor its order to ensure enforcement of the PSA. Nigel may not have known what Robin's specific testimony would be, yet he was on notice that it would pertain to his alleged violations of the PSA. Nigel received the process due him and we decline to further address his argument on this issue.

9

¶26   *5. Whether the District Court erred in awarding attorney's fees to Robin.*

¶27   Nigel argues the District Court abused its discretion in awarding Robin her attorney's fees. We do not agree. The PSA specifically provided for attorney's fees:

> 11. **Future Attorney's Fees**. Should any action be commenced to enforce, modify, or interpret any provision contained herein, the Court as a cost of suit shall award reasonable attorney's fees to the successful party.

We have stated, "[a]ttorney fees provisions contained in marital settlement agreements are enforceable agreements and the district court is bound by the agreement's terms if they are clear." *Hart v. Hart*, 2011 MT 102, ¶ 28, 360 Mont. 308, 258 P.3d 389. Here, the terms of the PSA were clear and Robin was the successful party in this action to enforce that agreement. The District Court did not abuse its discretion in awarding Robin her attorney's fees in this action. For the same reason, she also is entitled to her fees on appeal. *Hart*, ¶ 30.

## CONCLUSION

¶28   We affirm the District Court's Findings of Fact, Conclusions of Law and Order dated October 15, 2011, as well as its November 29, 2010 Order Approving Attorney's Fees. The matter is remanded for determination of Robin's attorney's fees and costs on appeal.

/S/ BETH BAKER

We concur:

/S/ BRIAN MORRIS
/S/ MICHAEL E WHEAT
/S/ JIM RICE
/S/ JAMES C. NELSON