DA 11-0620

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2012 MT 90

LAURA WENDLANDT,

      Petitioner and Appellee,

  v.

MICHAEL LAWRENCE JOHNSON,

      Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DR 08-350
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Michael Sol; Sol & Wolfe Law Firm, PLLP; Missoula, Montana

      For Appellee:

      Victor Bunitsky; Attorney at Law; Virginia City, Montana

Submitted on Briefs:  March 7, 2012

Decided:  April 24, 2012

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 Michael Lawrence Johnson (Michael) appeals the Fourth Judicial District Court's orders establishing support obligations and parenting arrangements for the parties' child, P.J. We hold that the District Court erred in adopting and implementing the recommendations of the child's Guardian ad Litem without first holding a hearing.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2 P.J. was born in Nevada, where Michael and Laura Wendlandt (Laura) were married in August 2002. Laura moved to Montana in 2004, taking P.J. with her. Michael and Laura finalized their divorce in Nevada in May 2005. Michael last saw P.J. when he visited Missoula, Montana in May 2008. At about that time, Montana Child Protective Services (CPS) began investigating allegations that Michael sexually abused P.J. Laura had taken P.J. to see a therapist, Mary Jo Barrett, after P.J. related incidents with Michael that gave Laura concern. After approximately six months of counseling, and as P.J. became increasingly verbal, Barrett made a report to CPS. No charges were filed and CPS determined the allegations could not be substantiated. However, CPS recommended appointment of a Guardian ad Litem, supervised visitation with Michael, Michael's completion of a sex offender evaluation, and continued individual counseling for P.J.

¶3 Laura filed an ex parte motion in the District Court on May 29, 2008, requesting temporary emergency jurisdiction, assumption of continuing jurisdiction, and an order of protection. Following unsuccessful attempts by the court to obtain files on the case from Nevada, Judge Larson ordered the parties to file status reports. In response to these reports, on March 12, 2009, the court appointed Guardian ad Litem Courtney Stone (Stone) and awarded full custody to Laura until Stone issued her report and recommendations. In her May 8, 2009

2

report, Stone recommended that, before Michael and P.J. were reintroduced, Michael needed to perform six specified tasks: (1) complete an evaluation by a certified sex offender therapist; (2) submit to testing for herpes; (3) complete a comprehensive psychological examination and parenting capacity assessment; (4) complete a full chemical dependency evaluation by a Licensed Addictions Counselor; (5) complete an investigative and relationship assessment per the recommendation of CPS; and (6) attend a Fourth Judicial District parenting class. Stone further recommended that once those tasks were completed, any visitation between Michael and P.J. should be supervised by P.J.'s therapist and should occur in Montana.

¶4 On May 12, 2009, the District Court held a jurisdictional hearing under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), together with the Third Judicial District Court of Nevada, which appeared telephonically. Laura was present, represented by counsel, and Michael appeared pro se by telephone from Nevada. At the hearing, Michael stated emphatically that he did not hurt his son, but he did not object to the admission of Stone's report and agreed with her recommendations. He stated he was willing to comply with requests from either court. Based on the agreement of both courts, Judge Larson ruled that Montana had jurisdiction over the matter. He adopted Stone's recommendations and terminated her appointment as GAL since she was taking a new job.

¶5 The court appointed a new Guardian ad Litem, Janna Gobeo (Gobeo), on October 28, 2009, at Laura's request. Gobeo conducted additional investigation and agreed with Stone's recommendations. Michael thereafter filed a request to conduct discovery on the sexual abuse allegations. The District Court denied his request on February 1, 2010, stating that the issue of sexual abuse was not being litigated and that the parties needed to focus on the parenting plan and what steps would be necessary to begin a reunification process between P.J. and his father.

3

Michael saw Dr. Robert Page, a psychologist, who performed an evaluation pursuant to the District Court's May 19, 2009 order adopting Stone's recommendations. In conferring with Gobeo, Dr. Page reported that Michael did not suggest any signs of psychopathology and that the data did not indicate Michael lacked parenting awareness or the skills to parent children safely. Though he did not meet P.J. or Laura, Dr. Page indicated that the results of his evaluation did not justify preventing Michael from visiting P.J. However, due to the lengthy separation, he recommended it was "necessary for a gradual, therapeutic reunification process to occur. . . . [under the direction] of an objective professional" after P.J.'s emotional fragility is assessed.

¶6      Gobeo filed her final report and recommendations to the court on March 15, 2010. She noted the various professionals working with P.J. believed "that any forced contact with his dad now would be extremely detrimental to [P.J.]'s well being." She recommended that P.J. not be reunified or have contact with his father until P.J.'s therapist verified the child was therapeutically ready to begin those efforts. Gobeo also discussed P.J.'s burgeoning relationship with his school counselor and the counselor's efforts in assisting P.J.'s therapist. Additionally, Gobeo's report described Michael's compliance with the tasks assigned him and the details of Dr. Page's evaluations—all of which had occurred following Stone's report. Though she found Michael "complied technically" with the list of tasks, she expressed skepticism because all of the evaluations had been completed by a single examiner, Dr. Page, and she would have expected "more thorough investigations of the issues." Gobeo's report also included recommendations that all parties receive (or continue to receive) counseling, and that "therapeutic boundaries" requiring the parties to transfer information about P.J. via P.J.'s therapist were necessary as "there was no reason whatsoever to bring [Michael and Laura] together any more ever" based on their continued hostility.

4

¶7 The court issued an order March 17, 2010, adopting Gobeo's recommendations unless objected to within ten days. Michael filed an objection to the report on March 30, 2010. He did not raise specific objections to the particulars of Gobeo's report, but requested discovery so that he would have the opportunity to address "all issues" that needed to be raised in order to adequately challenge her recommendations. He did not state what discovery was needed or what he thought would be gained by it. He also requested a hearing on discovery issues and additional time to allow full briefing regarding issues surrounding the "termination or near termination" of his parental rights.

¶8 On April 20, 2010, the court denied Michael's request for discovery and adopted Gobeo's recommendations. Stating it had "thoroughly reviewed" the case, the court ordered that full custody of P.J. would remain with Laura, and that reunification and visitation with Michael could resume when the child's therapist determines P.J. is therapeutically ready for contact. No hearing was held. The court stated it would not entertain any further motions on modification "unless there is a report from both the child's and Respondent's therapists." Michael appeals.

## STANDARD OF REVIEW

¶9 Whether a party's due process rights were afforded is a question of law to which we apply plenary review. *In re Marriage of Cini*, 2011 MT 295, ¶ 15, 363 Mont. 1, 266 P.3d 1257. We review orders granting or denying requests for discovery for an abuse of discretion. *State v. Peters*, 2011 MT 274, ¶ 22, 362 Mont. 389, 264 P. 3d 1124.

## DISCUSSION

¶10 Michael argues the court erred when it adopted Gobeo's recommendations without a hearing because it effectively terminated his parental rights with no opportunity for cross-examination. Laura argues that Michael's appeal is time-barred because he did not file his notice

5

of appeal within thirty days of the District Court's order. In our order of November 15, 2011, we denied Laura's motion to dismiss the appeal for want of timeliness since no notice of entry of judgment was filed. We decline to reconsider that ruling. *In re Marriage of Alexander*, 2011 MT 1, ¶ 12, 359 Mont. 89, 246 P.3d 712. Laura also contends the court acted within its discretion in refusing Michael's request for additional discovery and another hearing.

¶11 Section 40-4-212(1), MCA, governs a district court's custody determinations based on the best interests of the child, and allows the court to determine whether contact with a parent would be detrimental to the child's best interest. The statute states that such a determination must be made "after a hearing." Section 40-4-212(1)(l), MCA. A district court may place conditions on visitation. *In re Marriage of Kovash*, 260 Mont. 44, 51-52, 858 P.2d 351, 356 (1993); *Bradshaw v. Bradshaw*, 270 Mont. 222, 234, 891 P.2d 506, 513 (1995) (overruled on other grounds) (upholding district court's ruling that father could have opportunity for unsupervised visitation upon approval of his therapist).

¶12 We recently held that a district court's reliance on a GAL's report to determine custody without allowing the mother the opportunity to cross-examine the GAL violated the mother's due process rights. *In re Marriage of Puccinelli*, 2012 MT 46, ¶ 21, 364 Mont. 235, 272 P.3d 117. We held that since the GAL had "radically revised her parenting recommendations *following* the final hearing, [mother] had no opportunity to cross-examine her concerning her conclusions" even though she had the opportunity to submit written objections. (Emphasis in original.) *Puccinelli*, ¶ 20. We stated, "[u]nder our clear precedent, a district court may not rely on hearsay evidence contained in out-of-court reports when the report's author does not testify at the custody hearing and is not subject to cross-examination. To rely on such reports is a violation of the parent's due process rights." *Puccinelli*, ¶ 21.

6

¶13 By comparison, in *In re R.M.T.*, 2011 MT 164, ¶ 50, 361 Mont. 159, 256 P.3d 935, we considered whether a district court violated a father's rights by not allowing him to cross-examine the GAL during a parental rights termination hearing when the GAL's report provided little new information. We reiterated that "[d]ue process requires that a party be allowed to cross-examine the author of a written report presented to the court." *In re R.M.T.*, ¶ 47. However, since the GAL's two-page report did not provide new information to the court, and the same information was presented through other witnesses, the exclusion of the GAL's testimony "did not cause a substantial injustice" to the father and amounted to harmless error. *In re R.M.T.*, ¶ 50. The father had the opportunity for a hearing on the information offered against him, and cross-examination on the GAL's report would have been cumulative. *In re R.M.T.*, ¶ 50.

¶14 The District Court's April 20, 2010 order deprives Michael of parenting time with P.J. indefinitely without the opportunity to question the author of the report upon which the court's decision rested or to offer competing evidence. This deprivation, unlike the error considered in *In re R.M.T.*, is not harmless. Although Gobeo reiterated Stone's recommendations, Michael had at least minimally complied with the required tasks, and Gobeo's report contained additional findings, updated information and new recommendations. While the court's refusal to allow more discovery was within its discretion, *Puccinelli* requires that Michael be afforded a hearing before the court acts on the GAL's recommendations. In accordance with *Puccinelli*, the District Court may not rely exclusively on the GAL's written report in making its custody determination. As noted above, Michael already has been afforded an opportunity for a hearing on Stone's report. The District Court need not allow an expansive hearing encompassing matters previously considered. We hold only that Michael must be afforded a hearing on Gobeo's report and provided the opportunity for cross-examination.

7

¶15 The court also entered two orders concerning child support, one on July 20, 2009, and one on March 7, 2011. Both parties sought clarification of the final child support order, but the District Court had not issued a ruling on those motions prior to this appeal.

## CONCLUSION

¶16 We reverse and remand for the District Court to conduct a hearing in accordance with this opinion and for entry of an order on the parties' requests for clarification of the final child support order.


/S/ BETH BAKER


We concur:


/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE
/S/ JAMES C. NELSON