DA 12-0192

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 30

FILED

February 12 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

HELEN L. BRITTON and JOHN R. BRITTON,
or their successors, as TRUSTEES OF THE
BRITTON JOINT TRUST,

        Plaintiffs, Counter-Claim
        Defendants and Appellees,

   v.

ELISE C. BROWN,

        Defendant, Counter-Claimant
        and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                     In and For the County of Lake, Cause No. DV 07-299
                     Honorable Deborah Kim Christopher, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Maxon R. Davis; Davis, Hatley, Haffeman & Tighe, P.C.;
                Great Falls, Montana

                Jack R. Tuholske; Attorney at Law; Missoula, Montana

                Gregory J. Miner; Batemen Seidel, P.C.; Portland, Oregon

        For Appellees:

                William T. Wagner; Garlington, Lohn & Robinson, PLLP;
                Missoula, Montana

                Kathleen Unrein; Attorney at Law; San Anselmo, California

                Submitted on Briefs:  November 21, 2012
                          Decided:  February 12, 2013

Filed:

_____

                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Elise C. Brown (Brown) appeals the Final Partition Judgment of the Twentieth Judicial District Court, Lake County, which confirmed almost all of a report that partitioned 10.88 acres of property on and around Flathead Lake that Brown jointly owned with her sister, Helen L. Britton (Britton), as tenants in common. We reverse and remand for further proceedings.

¶2     The dispositive issue on appeal is whether the District Court erred by denying Brown's request for an evidentiary hearing after Brown had presented offers of proof challenging the referees' final partition report.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3     Because there was no trial or evidentiary hearing, we draw the facts from the referees' findings of fact and conclusions of law and the documents in the District Court record.

¶4     Since 1992, Britton and Brown have jointly owned 10.88 acres of real property on Flathead Lake as tenants in common.[1] The property—which the parties refer to as "the homestead"—contains approximately 1,270 feet of lakefront property as well as a cabin built in 1910 and other improvements. It has three distinct topographical lakefront features: (1) a rocky point overlooking Flathead Lake at the northern end of the property; (2) a narrow, 70-foot-wide "neck" of land that connects the rocky point with the southern portion of the property; and (3) a gravel beach to the south of the rocky point that runs

---

[1] While Britton's partition action was pending, she transferred her interest via warranty deed to Helen L. Britton and John R. Britton, or their successors, as trustees of the Britton Joint Trust.

along the lake for 287 feet. The cabin and other improvements are located behind the gravel beach. The parties' grandparents purchased the homestead in the 1940s and ever since it has been used by the family.

¶5 Britton filed a partition action in October 2007, seeking equitable partition of the homestead or, if the court determined that partition was not possible, a forced sale of the property and equal division of the net sale proceeds. Brown answered Britton's partition action by acknowledging that she co-owned the property as a joint tenant and by admitting that the homestead could be partitioned equitably by the district court. Brown also filed a counter-claim alleging that Britton had failed to pay her share of the expenses used to maintain the homestead. Britton has denied those allegations and the counter-claim is not at issue in this appeal.[2]

¶6 In June 2009, the District Court entered an initial case scheduling order, which set the case up as an ordinary civil matter. It set deadlines for the submission of expert witness names, the names of proposed referees, discovery, and proposed exhibits. It also set a date for a hearing to be held on any motions that might be submitted and further set a date for a partition hearing to be held if requested by the partition referees.

¶7 The District Court then appointed three partition referees as agreed upon by the parties and as contemplated by § 70-29-202, MCA. Britton and Brown each were allowed to appoint one referee, and in May 2010 those referees selected the third referee.

---

[2] Brown filed this appeal prior to resolution of the counterclaim by invoking her right to immediately appeal "an order in a partition action directing or refusing to direct a partition to be made." M. R. App. P. 6(3)(i).

The District Court directed the partition referees "to consult with each other and counsel in this case for purposes of arranging an appropriate inspection and investigation of the property and taking such action as is appropriate for the preparation of the required partition referees' report to the Court[.]"

¶8     The referees then fashioned a plan on how to proceed. They asked Britton and Brown to submit their proposals for partitioning the property and counsel for both parties submitted their respective suggestions. The referees together went to the premises twice for an inspection of the property, they met in person several times to discuss the matter and they solicited information from various sources regarding the potential costs of developing the property. Once the referees obtained all of the information they believed to be relevant, they issued to the parties a preliminary report along with a request that Britton and Brown provide feedback on the proposal.

¶9     Brown responded by submitting comments questioning the recommendations in the preliminary report; her response also included several exhibits purporting to show that some of the conclusions the referees relied upon in their preliminary report were erroneous. Brown alleged that the referees' proposed partition was inequitable—she disagreed with the referees' stated belief that lakefront property values differed depending on the terrain of the property and attached an appraisal report that argued each foot of lakefront property was equal in value. She also noted that the preliminary report bisected existing structures and utilities and submitted engineering reports that called into question the referees' determination that it would cost $350,000 to develop the rocky

point. Finally, Brown argued that her proposal should be adopted because Britton had not objected to it.

¶10 The referees submitted their final report to the District Court on April 25, 2011. The report recommended that the property be divided into two parcels. Parcel A included a total of 1,023 feet of lakefront—663 feet of the rocky point, 318 feet in the narrow "neck" and 42 feet on the gravel beach—valued by the referees at $1,236,000.00. Parcel B included 245 feet of lakefront on the gravel beach valued at $1,235,000.00. The property line between the two parcels bisected the cabin, but the referees noted that "any of the structures could be relocated." The final report did not address access to the proposed parcels.

¶11 The referees also specifically explained why they disagreed with Brown's appraisal report that argued each foot of lakefront property should be valued the same. The referees noted their objection to the appraiser's characterization of the rocky point and stated that the point would "present significant obstacles for anyone wishing to build on it," in stark contrast to the value and marketability of the gravel beach. Because of the unique shape and characteristics of the property, the referees "strongly encourage[d] the Court to view the property in person."

¶12 In response, Brown filed notice of her objections to the referees' final report and requested that "the Court convene a scheduling conference to set a trial date in this matter." Brown later filed a list of objections to the referees' final report and requested that she be allowed to depose the referees. Britton responded by agreeing with the

5

two-parcel division proposed by the referees and asked that Brown be prohibited from deposing the referees.

¶13 On June 9, 2011, the District Court held a scheduling conference to set a date and time to view the property. The court decided that it would view the property on July 20, 2011, with the referees present. The court also stated that while counsel for Britton and Brown could be present, the court would not speak with the attorneys. The District Court held in abeyance Brown's motions regarding the deposition of the referees until further notice. During the site visit, Brown's attorney approached the court and advocated on behalf of his client despite an order prohibiting such conduct. After realizing who the attorney was and that its order had been violated, the court also allowed Britton's counsel to advocate for his client's position.

¶14 After the District Court viewed the property, it issued another order of abeyance. The order declared that "[a]ll outstanding motions, requests for hearing[s], or scheduling conferences currently pending in this cause are hereby held in abeyance until August 25, 2011." The order also stated that, although the parties could ask the referees to consider investigating certain claims, the referees were not required "to evaluate other experts hired by the parties" and the referees could "follow up on or ignore the requests." The court also noted that it was "inclined to confirm the referees [*sic*] report."

¶15 On August 24, 2011—one month after the District Court entered its order of abeyance—Brown filed a motion for a trial on the partition action and her underlying counterclaim. Brown also filed affidavits from eleven individuals, some of whom Brown

6

contends were well-qualified experts. Those affidavits attacked a number of the conclusions relied upon by the referees in their final report. Brown explained in her appeal that the affidavits were filed as "an offer of proof showing the testimony and evidence [Brown] intended to present and the reason a trial was necessary to allow her the opportunity to create a record of admissible evidence as due process requires." The District Court did not respond to the motion.

¶16 On October 14, 2011, the District Court entered an order confirming the partition proposed by the referees. The court's order explained that it originally had intended to approve the referees' proposal and that "the viewing of the property merely settled the Court's intention of confirming the Referees' report pursuant to § 70-29-211, MCA." The District Court then ordered Britton to "prepare a final judgment based on the two parcel division recommendation of the Referees."

¶17 Britton drafted a proposed final partition judgment based on the referees' final report and suggested that Brown be allowed to choose the parcel she wanted. Brown objected to the proposed judgment, arguing that it denied her due process rights, exceeded the scope of the referees' final report and unilaterally modified the proposal. Specifically, Brown objected that Britton's proposed judgment moved the property line established by the referees and made a ruling on how the parcels would be accessed, a topic never addressed by the referees.

¶18 The District Court did not respond to those objections. Instead, on February 28, 2012, the court entered a Final Partition Judgment that adopted the recommendations

7

submitted by Britton and directed Brown to choose the parcel she desired. Brown responded by selecting Parcel B; the selection was "conditional and involuntary" so as to preserve her right to appeal. Brown appeals from the District Court's Final Partition Judgment.

## STANDARD OF REVIEW

¶19 Whether a party's due process rights were afforded "is a question of law to which we apply plenary review." *Wendlandt v. Johnson*, 2012 MT 90, ¶ 9, 365 Mont. 1, 277 P.3d 1208 (citing *In re Marriage of Cini*, 2011 MT 295, ¶ 15, 363 Mont. 1, 266 P.3d 1257).

¶20 A district court possesses "'great flexibility' in fashioning appropriate relief for the parties in a partition action." *LeFeber v. Johnson*, 2009 MT 188, ¶ 35, 351 Mont. 75, 209 P.3d 254 (citing *Anderson v. Woodward*, 2009 MT 144, ¶ 16, 350 Mont. 343, 207 P.3d 329). When the referees in a partition action submit their final report to the district court, the court "may confirm, change, modify, or set aside the report . . . ." *Kellogg v. Dearborn Info. Servs., LLC*, 2005 MT 188, ¶ 9, 328 Mont. 83, 119 P.3d 20 (quoting § 70-29-212, MCA). We review the district court's findings of fact in a partition action "to determine whether they are clearly erroneous." *Kellogg*, ¶ 9 (citing *Troglia v. Bartoletti*, 266 Mont. 240, 244, 879 P.2d 1169, 1171 (1994)). We review the district court's conclusions of law to determine "whether they are correct." *Kellogg*, ¶ 9.

8

¶21 ***Did the District Court err by denying Brown's request for an evidentiary hearing after Brown had presented offers of proof challenging the referees' final partition report?***

¶22 Brown argues that the District Court's Final Partition Judgment "permanently deprived [her] of the future use, enjoyment and ownership of the property" without first providing her due process of the law as mandated by the United States and Montana Constitutions. She contends that the hallmark of due process is the right to be heard in a meaningful manner and that the court did not provide her with that opportunity before rendering its judgment. Brown maintains that this case "must be remanded for a trial or a full evidentiary hearing prior to entry of a partition judgment[.]" Brown further alleges that the District Court denied her due process rights when it refused to allow her to "depose or cross examine the Referees" to test the conclusions reached by the referees' report.

¶23 Although Britton "recognizes the ordinary principles of due process require notice and an opportunity to be heard," she asserts that "the record demonstrates . . . all parties were given multiple opportunities to be heard, just not in the manner [Brown] prefers." Britton maintains that Brown's due process rights were satisfied because she was "given an opportunity to participate in the partition action as fully contemplated by the statutory scheme," which does not explicitly require the district court to hold a trial or evidentiary hearing. According to Britton, Brown's participation included selecting one of the

9

referees, submitting a partition proposal to the referees and filing objections to the referees' final report along with supporting affidavits. For the reasons explained below, we agree with Brown that, upon presenting substantiated objections to the referees' final report supported by sufficient evidence, she was entitled to an evidentiary hearing where the competing evidence could be weighed by the finder of fact.

¶24 When real property is owned by joint tenants or tenants in common, one or more of those persons may exercise their right to bring an action to partition the real property. Section 70-29-101, MCA. An order partitioning property "extinguishes a tenant's rights in the whole property, and establishes the tenant's exclusive right of ownership in the part of the property set off to him." *McCarthy v. Lippitt*, 781 N.E.2d 1023, 1029 (Ohio App. 3d 2002). Pursuant to statute, a district court must order the sale of the property or, when possible, the partition of property according to the respective rights of the owners as ascertained by an appointed referee or referees. Section 70-29-202, MCA. The referees are required to make a report to the district court detailing the manner in which the property should be divided, § 70-29-211, MCA, which the district court may "confirm, change, modify or set aside," § 70-29-212, MCA.

¶25 Because a partition action divests a person of her property, her interests are protected by the Due Process Clause of the Montana Constitution. Mont. Const. art. II, § 17. Although this Court never has addressed what process is due to a party challenging the referees' report, we often have held that the "fundamental requirements for due process are 'notice and [an] opportunity for [a] hearing appropriate to the nature of the

10

case.'" *Kulstad v. Maniaci*, 2010 MT 248, ¶ 41, 358 Mont. 230, 244 P.3d 722 (citation omitted).

¶26 Brown argues that the "Partition Order affords no basis for review because it suffers from a complete lack of any evidence." As previously stated, we review the court's findings of fact in a partition action to determine whether they are "clearly erroneous." *Kellogg*, ¶ 9. This standard necessarily implies that an evidentiary record must exist for this Court to review. A finding is clearly erroneous "if it is not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the evidence leaves this Court with a definite and firm conviction that a mistake has been made." *Puccinelli v. Puccinelli*, 2012 MT 46, ¶ 13, 364 Mont. 235, 272 P.3d 117. Because the District Court did not hold an evidentiary hearing or a trial, none of the documents found in the District Court record—including the referees' final report—was ever admitted into evidence and the credibility of those documents was never tested. In the absence of such a record, we cannot say whether the court's Final Partition Judgment was supported by substantial credible evidence or whether the District Court made a mistake in entering the judgment. As demonstrated below, a review of decisions from other jurisdictions supports this holding.

¶27 We begin our analysis by acknowledging that the legislature has not provided a specific directive as to the manner in which a party's challenge to the referees' report is to proceed. The law does provide that a district court may "change, modify, or set aside the report," § 70-29-212, MCA, making clear that the referees' report is "subject to some

11

level of judicial review." *Joseph v. Joseph*, 719 N.E.2d 323, 325 (Ill. App. 3d 1999). As this Court has noted, a district court commits error if it confirms a report that is not supported by "substantial evidence." *Tillett v. Lippert*, 275 Mont. 1, 6, 909 P.2d 1158, 1161 (1996). Similarly, if the referees "made an unequal or unjust partition, or if they acted under a mistake which would naturally lead them to make an unequal or unjust partition, their doings ought not to be affirmed." *Hall v. Hall*, 25 N.E. 84, 85 (Mass. 1890). Other reasons upon which the district court may amend or set aside the referees' report include "procedural irregularities in the preparation and submission of the report, and substantial inequality of value in the portions allotted to the parties." *Schroeder v. Lawhon*, 922 So. 2d 285, 293 (Fla. App. 2006). The right to partition real property is "essentially equitable in nature" and courts in other jurisdictions consistently have been guided by certain fundamental principles of equity and due process when partitioning property. *Platt v. Platt*, 264 P.3d 804, 810 (Wyo. 2011) (quoting *Bryan v. Locker*, 640 N.E.2d 590, 592 (Ohio App. 3d 1994)).

¶28 Although partition referees act as quasi-judicial officers, the power to partition property and extinguish property rights is an exercise of judicial power vested solely in the district court. Section 70-29-212, MCA; *McCarthy*, 781 N.E.2d at 1029. Once the referees have filed their report, it is subjected to judicial review and the district court is granted wide discretion in reviewing, modifying or adopting the report. *Tillett*, 275 Mont. at 6, 909 P.2d at 1160 (citing § 70-29-212, MCA); *Brogoitti v. Brown*, 372 P.2d 773, 776-77 (Ore. 1962). Due process requires that the parties to the action be afforded a

12

right to be heard when "the report comes before the court" for consideration. *Field v. Hudson*, 176 P. 73, 75 (N.M. 1918) (citing *McClanahan v. Hockman*, 31 S.E. 516, 517 (Va. 1898); *McCracken v. Droit*, 108 Ill. 428, 432 (1884). For that reason, we cannot agree with Britton's contention that Brown's due process rights were satisfied when Brown was allowed to select a referee and submit partition proposals to the referees. Whatever process Brown was due must have been afforded by the District Court when it was considering the referees' final report.

¶29 Parties to a partition action have the right to object to the referees' partition report before the District Court. *Shumate v. Chenault*, 33 S.E. 991, 994 (Ga. 1899); *Alderson v. Horse Creek Coal Land Co.*, 111 S.E. 589, 590 (W. Va. 1922). This objection may be "founded upon a material mistake of law or of fact[.]" *Smith v. Hill*, 60 So. 57, 58 (Ala. 1912). Because a partition action is an adversarial proceeding, the party who believes that the referees' report is deficient bears the burden of offering sufficient evidence to support her objection. *Joseph*, 719 N.E.2d at 325 (citing *Miller v. Lanning*, 71 N.E. 1115, 1116 (Ill. 1904)); *Wright v. Wright*, 475 N.E.2d 556, 560 (Ill. App. 3d 1985); *Rosenbaum v. Rosenbaum*, 349 N.E.2d 73, 83 (Ill. App. 3d 1976). If the referees' report becomes a matter of legitimate dispute due to the submission of sufficient evidence, the report then is "subject to challenge in an evidentiary hearing." *Prostak v. Prostak*, 607 A.2d 1349, 1353 (N.J. Super. 1992). If the district court fails to hold an evidentiary hearing after a party submits sufficient evidence challenging the report, the court has denied that party due process of the law. *See Field*, 176 P. at 76. An objection

13

unsupported by sufficient evidence does not entitle a party to an evidentiary hearing because that would frustrate the statute's goal of providing "a cheap and expeditious method of partition." *Field*, 176 P. at 76; see also *Wright*, 475 N.E.2d at 560.

¶30    We hold that when a party makes a substantiated claim of factual or legal error in the referees' report, due process protections and equitable concerns require the district court to hold a hearing to weigh the objections against the report to determine whether the referees' report equitably divides the real property in question prior to confirming, changing or modifying the report pursuant to § 70-29-212, MCA.   If neither party presents substantiated objections to the referees' report supported by sufficient evidence, the District Court may confirm the report pursuant to § 70-29-212, MCA, without holding an evidentiary hearing.    Likewise, a party is entitled to be heard upon substantiated objections to errors of law.

¶31    Brown objected to the final partition report and submitted affidavits from eleven individuals, including several purported experts, challenging the conclusions reached by the referees.  The evidence she submitted was sufficient to place the referees' final report in legitimate dispute.   Based on our review of established partition law, Brown's objections were sufficient to compel the District Court to hold an evidentiary hearing. An evidentiary hearing only guarantees Brown an opportunity to be heard; it does not guarantee she "will get what [she] 'wants.'" *Smith v. Bd. of Horse Racing*, 1998 MT 91, ¶ 12, 288 Mont. 249, 956 P.2d 752.

14

¶32 Brown also objected to the District Court's decision to prohibit the parties from deposing or cross-examining the referees. There is no statute that either expressly prohibits or contemplates the referees being deposed or testifying at an evidentiary hearing. It appears, however, that testimony from the referees is not uncommon at such a hearing. *Ivins v. Hardy*, 134 Mont. 445, 450, 333 P.2d 471, 473 (1958), *overruled on other grounds*, *Tillett*, 275 Mont. at 6, 909 P.2d at 1160 (discussing the district court's confirmation of report "after hearing testimony of all appraisers and of numerous witnesses for the contending parties"). We agree with the Illinois Court of Appeals that "[i]f an objector wishes to examine the [referees] on the report, clearly he has that right." *Wright*, 475 N.E.2d at 560. If neither party wants to depose a referee or gives notice of his or her desire to examine a referee, however, "there is no obligation [for the referee] to appear and testify." *Wright*, 475 N.E.2d at 560. Since we are remanding for an evidentiary hearing, we clarify that either party may call the referees as witnesses during the hearing. The scope of pre-hearing discovery from the referees is subject to applicable Rules of Civil Procedure and the discretion of the trial court.

¶33 The District Court's Final Partition Judgment is reversed and remanded for an evidentiary hearing consistent with this opinion.

/S/ Beth Baker

We concur:
/S/ Mike McGrath
/S/ Patricia Cotter
/S/ Michael E Wheat
/S/ Jim Rice

15