**FILED**

March 5 2013

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 11-0542

IN THE SUPREME COURT OF THE STATE OF MONTANA

2013 MT 55

VIANNA STEWART,

       Plaintiff and Appellee,

  v.

CLARK E. RICE AND EDYTHE RICE,

       Defendants and Appellants.

JUANITA STANDS,

       Cross-Claim Plaintiff and Appellee,

  v.

CLARK E. RICE AND EDYTHE RICE,

       Cross-Claim Defendants and Appellants,

EDYTHE RICE,

       Cross-Claim Plaintiff and Appellant,

  v.

JUANITA STANDS,

       Cross-Claim Defendant and Appellee.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
                 In and For the County of Big Horn, Cause No. DV 06-122
                 Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        Joseph M. Raffiani; Raffiani Law Firm, P.C.; Billings, Montana
        (for Edythe Rice)

        Clark E. Rice, self-represented; Lodge Grass, Montana

    For Appellees:

        Kelly J. Varnes; Hendrickson Law Firm; Billings, Montana
        (for Vianna Sewart)

        Elizabeth Honaker; Honaker Law Firm; Billings, Montana
        (for Juanita Stands)

Submitted on Briefs:  December 12, 2012

Decided:  March 5, 2013

Filed:

_____
               Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1     Clark E. Rice and his mother, Edythe Rice, appeal from the Twenty-Second Judicial District Court's judgment holding Clark and Edythe jointly and severally liable for injuries sustained by Juanita Stands and Vianna Stewart during a vehicular collision.

¶2     We address the following issues on appeal:

¶3     *1. Whether Clark is entitled to a new trial and a new judge based on erroneous evidentiary rulings, biases of witnesses, the failure of some witnesses to attend trial, or the court's failure to appoint trial counsel.*

¶4     *2. Whether the District Court committed reversible error by proceeding to trial without addressing Edythe's mental competency or ensuring the parties met statutory notice requirements, and whether the trial violated Edythe's right to due process.*

¶5     We affirm the District Court's judgment against Clark. We reverse the District Court's judgment as to Edythe and remand the case to the District Court for an evaluation of Edythe's need for a conservator and a new trial limited to the question of her vicarious liability.

## PROCEDURAL AND FACTUAL BACKGROUND

¶6     Edythe Rice owns and resides on a small cattle ranch in Big Horn County, Montana. Edythe is in her late eighties and her son, Clark Rice, assists her in performing ranch duties. On January 20, 2006, Clark, Juanita Stands and Vianna Stewart were involved in a vehicular collision on Old Highway 87 on the Crow Reservation in Big Horn County. It was a cloudy evening and the sun had set at approximately 4:59 p.m. Some time between 5:00 p.m. and 5:30 p.m., in "advanced twilight," Clark turned a tractor onto Old Highway 87 from an intersecting dirt road. He could see cars

3

approaching from a distance on the highway. As Clark pulled onto the highway and began travelling northbound, the tractor's left side extended into the highway's northbound lane. The tractor's lights were not illuminated. Juanita Stands, also driving northbound, approached at high speed and struck the tractor's left rear tire. The impact caused Juanita's vehicle to spin into the neighboring lane, where it collided with Vianna Stewart's southbound vehicle. Juanita and Vianna sustained injuries from the accident. The tractor and both automobiles were total losses.

¶7 Beginning in December 2006, the parties spent nearly five years in litigation before the District Court to decide liability for the accident-related damages. Vianna filed an initial complaint alleging negligence against Clark and Juanita on December 1, 2006. Juanita filed a cross-claim against Clark, who filed a counter cross-claim against Juanita. Vianna later stipulated to dismissing the claims against Juanita, and amended her complaint to include Edythe as a defendant under the doctrines of *respondeat superior* and negligent entrustment. She alleged that Edythe owned the ranch and that Clark was operating the tractor on Edythe's behalf at the time of the accident. On September 8, 2009, Edythe filed a *pro se* answer denying that Clark was acting as her employee at the time of the accident. On December 11, 2009, through her retained counsel, Robert Stephens, Edythe filed an amended answer denying vicarious liability and negligent entrustment and cross-claimed against Juanita. On February 2, 2010, Juanita amended her cross-claim to include Edythe as a defendant. The case was set for a

4

December 15, 2009, jury trial, but the trial date was continued as the parties filed motions to dismiss and motions for summary judgment.

¶8    By 2011, Clark and Edythe could no longer fulfill their obligations under the fee contracts with their attorneys.  On January 7, 2011, Clark's counsel, Paula Saye-Dooper, filed a motion to withdraw from representation based on Clark's inability to pay the legal fees.  Clark consented to his counsel's withdrawal.  On January 10, 2011, Vianna served "Rule 10 notice"[1] upon Clark requiring him to appoint new counsel or proceed *pro se*.  On January 12, 2011, the District Court granted Saye-Dooper's motion to withdraw from representation.

¶9    On January 21, 2011, Edythe's attorney, Robert Stephens, filed a Motion to Withdraw and Motion to Continue.  He stated that his role in the lawsuit was intended to be "ancillary to lea[d] counsel, Paula Saye-Dooper," that he no longer had access to the trial preparation materials now in Clark's possession, that Edythe could no longer pay her fees, and that Edythe had become incompetent.  His motion and supporting affidavit explained that "Edythe Rice is no longer competent, in counsel's opinion, to understand the nature of the proceedings or to assist in her own defense."  Having spoken with Edythe's physician, who "found mild cognitive impairment primar[ily] impacting recent memory and ability to recall details," Stephens expressed concern that Edythe's ability to testify as a witness would be significantly impaired.  He stated in the affidavit that he had also spoken with Clark, who agreed that his mother "no longer knows[] where she is, no

---

[1] Rule 10 of the Uniform District Court Rules (U. Dist. Ct. R. 10).

longer has an understanding of the immediate circumstances, has no memory and is otherwise non *compos mentis*." He requested that the trial, now scheduled for February 2, 2011, be continued and that a conservator be appointed prior to any further proceedings because it would be "an injustice to require [an] incompetent woman to proceed to trial without representation[.]"

¶10 On February 4, 2011, Stephens filed a motion to allow Edythe to testify by deposition. The motion represented that, based on the medical opinion of Edythe's doctor, Edythe's mental condition would cause her to be "'unavailable' within the meaning of the Montana Rules of Civil Procedure for purposes of allowing her deposition testimony," and that Edythe "may not be a competent witness based upon her mental impairment[.]"

¶11 On May 6, 2011, the District Court granted the motion to allow Edythe to testify by deposition and, on May 18, 2011, it granted Robert Stephens's motion to withdraw from representation. The court did not address the question of Edythe's competency or Stephens's suggestion for appointment of a conservator. In February 2011, Clark filed a consent to waiver of a jury trial.

¶12 The District Court conducted a bench trial on July 7, 2011, in which Juanita and Vianna were represented by counsel and Clark and Edythe appeared *pro se*. Edythe was physically present but did not present any evidence or participate in the trial.

¶13 In its September 7, 2011 order, the District Court concluded that Clark was negligent *per se* for violating three traffic statutes: (1) § 61-8-343, MCA, by failing to

6

yield to oncoming traffic when he entered the highway; (2) § 61-9-201, MCA, by failing to illuminate the lights on his tractor within one-half an hour after sunset; and (3) § 61-9-415(1), MCA, by failing to properly display an emblem while operating on a state highway a slow-moving vehicle normally used at speeds less than twenty-five miles per hour. The court determined that each statutory violation was an actual and proximate cause of the resulting collisions. The court further determined that Edythe was vicariously liable for the injuries because she was the principal of the ranch, Clark was her agent with regard to ranch business, and "Clark was acting within the scope of his duties at the time of the accident."

¶14 Considering the atmospheric conditions at the time of the accident, the court also concluded that "Juanita should have anticipated the presence of Clark's tractor in enough time to lessen the severity of the impact," and that her comparative negligence was responsible for twenty percent of her injuries. The court's judgment stated that Clark and Edythe were jointly and severally liable for eighty percent of Juanita's claimed damages, amounting to $582,516, one hundred percent of Vianna's claimed damages, amounting to $48,501.98, and for the cost of the action to both Juanita and Vianna. Clark, proceeding *pro se*, and Edythe, through appellate counsel, appealed to this Court.

**STANDARD OF REVIEW**

¶15 We review the district court's factual findings for clear error and its legal conclusions for correctness. *Boyne USA, Inc. v. Spanish Peaks Dev., LLC*, 2013 MT 1, ¶ 28, 368 Mont. 143, 292 P.3d 432. We review the district court's evidentiary rulings for

an abuse of discretion.  *McEwen v. MCR, LLC*, 2012 MT 319, ¶ 16, 368 Mont. 38, 291 P.3d 1253.

¶16     We generally do not review issues raised for the first time on appeal.  *Brookins v. Mote*, 2012 MT 283, ¶ 24, 367 Mont. 193, 292 P.3d 347.  We may review "a claimed error not previously raised in the district court which affects fundamental constitutional rights where failing to review it may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process."  *Paulson v. Flathead Conserv. Dist.*, 2004 MT 136, ¶ 40, 321 Mont. 364, 91 P.3d 569.  This Court exercises plenary review of constitutional issues, "such as an alleged violation of the right to due process."  *In re Marriage of Cini*, 2011 MT 295, ¶ 15, 363 Mont. 1, 266 P.3d 1257.

## DISCUSSION

¶17     *1.  Whether Clark is entitled to a new trial and a new judge based on erroneous evidentiary rulings, biases of witnesses, the failure of some witnesses to attend trial, or the court's failure to appoint trial counsel.*

¶18     In his *pro se* brief, Clark alleges numerous factual, evidentiary and procedural errors, which we summarize as follows: (1) inaccurate and fraudulent witness testimony, particularly with regard to the time of day that the accident took place and the order of events following the accident, (2) law enforcement withheld relevant evidence and failed to attend the trial and the court prevented Clark from presenting evidence, (3) the trial was procedurally unfair due to Clark's hearing issues and lack of representation by counsel, and (4) Clark did not knowingly and intelligently waive his right to a jury trial.

8

¶19 We agree with the Appellees that Clark's factual challenges are unsupported and that he fails to provide any grounds for concluding that the court's findings were clearly erroneous. His evidentiary challenges are similarly unsupported by argument as to how any specific ruling was an abuse of discretion, or which relevant evidence the court refused to consider. Clark has not shown that the District Court abused its "broad" discretion in deciding the admissibility of evidence or that any allegedly improper ruling materially affected his substantial rights. *Stevenson v. Felco Indus.*, 2009 MT 299, ¶ 16, 352 Mont. 303, 216 P.3d 763; *see* M. R. Evid. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]").

¶20 Though the trial transcript indicates that Clark on more than one occasion complained of having difficulty hearing, the District Court made every effort to accommodate his needs by repeating information for him and assuring that he heard and understood all of the proceedings as the trial progressed.

¶21 Clark asserts that he was entitled to court-appointed counsel. There is no absolute right to counsel in civil proceedings, however, particularly where a defendant's deprivation of liberty is not at stake. *See Turner v. Rogers*, ___ U.S. ___, 131 S. Ct. 2507, 2518 (2011); *see also In re Marriage of Prescott*, 259 Mont. 293, 297, 856 P.2d 229, 232 (1993). Clark consented to the withdrawal of his counsel and chose to proceed *pro se*.

¶22 Finally, on February 17, 2011, Clark filed a Waiver of Jury Trial, requesting that "the above-captioned matter be tried to the court sitting without a jury," which he signed on February 10, 2011. There is no indication that he did not understand that he was waiving his jury trial and that a bench trial would be held. Since Clark is not entitled to a new trial, he also is not entitled to a new judge.

¶23 Accordingly, we affirm the District Court's judgment against Clark and his liability to Vianna and Juanita.

¶24 *2. Whether the District Court committed reversible error by proceeding to trial without addressing Edythe's competency or ensuring the parties met statutory notice requirements, and whether the trial violated Edythe's right to due process.*

¶25 Edythe argues, first, that the District Court erred by failing to address her mental competency, as requested by her counsel prior to trial; second, that the plaintiffs failed to serve her with statutorily-required notice following her counsel's withdrawal from representation; and third, that these pre-trial errors, as well as the trial in which she presented no defense, violated her fundamental right to due process of the law.

*a. Competency*

¶26 While she recognizes that a party suffering from mental health problems does not necessarily have a right to a competency evaluation or the assistance of a conservator, Edythe argues that "the District Court's failure to address this issue prior to the trial materially affected Edythe's rights at trial." She points out that, either her "mental deficiencies were real and she deserved, at least, a cursory review" of her competency to stand trial, "or they were not, and she should have been afforded an opportunity to at a

10

minimum testify, or better still, to have been treated as the party to the action that she was." Edythe's appellate counsel notes that, while Edythe was physically present at her trial, aside from a handful of instances, "the record is absolutely silent as to Edythe's participation," and indeed indicates Edythe "was not even in the courtroom as the trial progressed." The trial transcript indicates at one point that Edythe was outside of the courtroom eating, and the court, with Clark's approval, proceeded to hear testimony in her absence.

¶27 Vianna responds that there was no evidence Edythe suffered from mental health issues, given that "[t]here was no court-ordered mental examination conducted on her prior to trial." Additionally, because the question of competency was raised only by "ancillary" co-counsel in a motion to withdraw from representation, Vianna contends it effectively was raised for the first time on appeal and should not be reviewed. Juanita adds to these arguments that Stephens's motion requested as relief only his withdrawal as counsel and continuation of the trial date and, further, after filing the motion, he continued to represent Edythe for four months, but "never submitted any additional motion or evidence on behalf of Edythe to back up his contention." Offering no authority, she argues that Stephens was required to file a separate motion requesting a competency evaluation. According to both Appellees, Edythe did not preserve the issue because she failed to challenge her own competency when she appeared *pro se* at trial. For the reasons explained below, we disagree with these arguments.

11

¶28 Under § 72-5-401, MCA, any person who is interested in the protected person's welfare may seek a conservatorship. *See In re Conservatorship of Kloss*, 2005 MT 39, ¶¶ 8-10, 326 Mont. 117, 109 P.3d 205 (recognizing that even opposing counsel has standing to petition for a conservatorship under the statute). As noted, Stephens was Edythe's counsel of record when he filed a motion to withdraw, in which he raised concerns based on conversations with Edythe's doctor and Clark, as well as his own observations, that Edythe was incompetent and required a conservator. His motion stated in part as follows:

> Edythe Rice is no longer competent, in counsel's opinion, to understand the nature of the proceedings or assist in her own defense. There has been a serious decline in her mental state, and it is believed that she would not be a competent witness and could only testify through her prior deposition. On January 14, 2011, counsel had telephonic contact with Dr. John Foster, Edythe Rice's physician. He advised that he had conducted a mini mental status exam (MMS). He found mild cognitive impairment primar[ily] impacting recent memory and ability to recall details. He stated that Edythe would be fairly easily confused especially under stressful conditions. He concluded her ability to testify as a witness would be significantly compromised.
> . . .
> It is counsel's opinion that Edythe Rice, as an incompetent person, needs to have a conservator appointed so that she may have a legal representative to protect her interests, and that the current status of her mental health and the circumstances under which she is currently bound, dictate the need for a conservatorship before any proceedings may move forward in this matter.
> . . .
> The remedy is to continue the matter and have a conservator appointed to Edythe Rice in order to protect her legal interests.

¶29 Within two weeks of filing his motion to withdraw, Stephens filed a motion to allow Edythe to testify by deposition, which stated again that Edythe "may not be a competent witness based on her mental impairment[.]" These pre-trial motions raised the

12

issue of Edythe's competency before the District Court and requested as relief the appointment of a conservator.

¶30 After approximately five years of pre-trial litigation, Edythe's attorney raised concerns, based in part on her doctor's opinion, that she was incompetent and could no longer understand the proceedings against her. Edythe then proceeded to trial without counsel, did not present a defense, and was apparently absent from the courtroom during portions of her trial. Whether or not Stephens filed a separate motion, we conclude that he put the court on notice of the problem sufficiently to preserve the issue for review. *See State v. West*, 2008 MT 338, ¶ 17, 346 Mont. 244, 194 P.3d 683 (rationale behind the "timely-objection rule" is to bring "alleged errors to the attention of each court involved, so that actual error can be prevented or corrected at first opportunity") (quotation marks and citation omitted).

¶31 During trial, Clark expressed concern about his mother's mental condition and her ability to serve as a witness. He stated, "I have a doctor's statement that said she should not be put on the court stand." The court recognized "there's no guarantee that what she's able to testify to she has an understanding of at this time," and decided to admit her deposition as testimony. The District Court faced an understandably difficult challenge in attempting to provide appropriate procedural protections to two unrepresented litigants where significant interests were at stake. *See Turner*, 131 S. Ct. at 2519. The court aptly took measures to mitigate Edythe's lack of representation and limited ability to comprehend trial proceedings by permitting her to adopt her deposition as her trial

13

testimony.  *See* Richard Zorza, *A New Day for Judges and the Self-Represented: The Implications of Turner v. Rogers*, 50 Judges' J., 16 (Fall 2011) (noting that best practices in *pro se* cases include allowing unrepresented parties to adopt written submissions as sworn testimony).  We nonetheless recognize, based on our review of the entire record in this case, that the failure to evaluate Edythe's competency prior to trial raises significant questions of the fundamental fairness of the proceedings with respect to her unrepresented participation in the trial.  We conclude that these circumstances required an evaluation of Edythe's need for a conservator.

### b.  "Rule 10 Notice" Requirement

¶32    Edythe argues, secondly, that the Plaintiffs failed to meet the "Rule 10 notice" requirements provided in U. Dist. Ct. R. 10 and § 37-61-405, MCA, after Stephens withdrew from representation.  The rule and statute require that when an attorney withdraws from representing a party to an action or proceeding, the opposing party *must*, "before any further proceedings are had" against that party, provide the party with notice requiring the party to appoint new counsel or personally appear in further proceedings. In *Quantum Electric, Inc. v. Schaeffer*, 2003 MT 29, ¶¶ 28, 34, 314 Mont. 193, 64 P.3d 1026, we established a "clear rule" requiring strict compliance with the statute and rule "when a party becomes unrepresented."   Noting the "relative ease with which proper notice is given," we clarified that the Rule 10 notice requirement was satisfied only if it contained each of the components listed in the statute:

> Accordingly, we hold that in order to properly protect the interests of the unrepresented party, the opposing party, as required by the plain language

14

of § 37-61-405, MCA, must require the unrepresented party, by written notice, to appoint another attorney or appear in person. Further, that written notice must include the date of the next action required in the case. In addition, according to Rule 10, U. Dist. Ct. R., written notice must also include notice that if the unrepresented party fails to appoint an attorney or appear in person within twenty days from the date of the notice, the action or other proceeding will proceed and may result in a judgment or other order being entered against him.[2]

*Quantum Electric*, ¶ 27.

¶33 In *Quantum Electric*, the plaintiffs failed to provide Rule 10 notice following withdrawal of defendants' counsel, but argued that the defendants' substantial rights were not prejudiced because they had actual notice of the proceedings. There, the district court's order for withdrawal of counsel, served on the defendants, included specific language stating that they must advise the court of new counsel within thirty days or proceed *pro se*. *Quantum Electric*, ¶ 5. We clarified that the defendant's receipt of actual notice and appearance in subsequent proceedings did not render such error harmless and reversed a summary judgment ruling in favor of the plaintiffs. *Quantum Electric*, ¶ 35.

¶34 Edythe points out that Vianna provided Rule 10 notice to Clark after his counsel moved to withdraw, but did not provide any such notice to Edythe following the court's May 18, 2011 Order Allowing Withdrawal of Edythe Rice's Counsel of Record. Vianna claims that the notice sent to Clark on January 10, 2011, "was intended for both parties, although it only included Clark's name." She fails to recognize that Edythe was a

---

[2] U. Dist. Ct. R. 10 now provides twenty-one days from the date of notice for the unrepresented party to appoint new counsel.

separate party to the lawsuit, on whom separate notice had to be served. Her suggestion that notice served upon Clark was sufficient for both parties is, moreover, implausible: Edythe's counsel of record was not granted leave to withdraw from representation until more than four months after Vianna served notice upon Clark.

¶35 We disagree with Vianna's contention that *Quantum Electric* is inapplicable because, there, "[t]he plaintiff failed to send any kind of notice as contemplated by Rule 10 and the statute," whereas here, notice sent to Clark provided Edythe with actual notice as demonstrated by her appearance at the trial. The plaintiffs in this case failed to send Edythe any form of Rule 10 notice following withdrawal of her counsel and we have made clear that actual notice is insufficient. *Quantum Electric*, ¶ 35. Nor does it matter here, as Vianna argues, that *Quantum Electric* was decided prior to trial, on summary judgment—in both cases, plaintiffs failed to meet the statutory notice requirements and final judgment was entered in their favor. The Rule 10 notice requirement is an important procedural safeguard intended specifically to protect unrepresented litigants like Edythe from procedural unfairness. *Puhto v. Smith Funeral Chapels, Inc.*, 2011 MT 279, ¶ 16, 362 Mont. 447, 264 P.3d 1142. We hold that the plaintiffs' failure to provide Rule 10 notice to Edythe prejudiced her substantial rights and constitutes reversible error. *Quantum Electric*, ¶ 36. Accordingly, on the authority established in *Quantum Electric*, we agree with Edythe that the Plaintiffs' failure to serve her with Rule 10 notice at the time she became unrepresented requires reversal of the District Court's judgment against her.

16

*c. Due Process*

¶36    Finally, Edythe argues that the District Court denied her the opportunity to participate in her trial because she did not deliver an opening statement, call or cross-examine witnesses, give a closing argument, or have the opportunity to submit proposed findings of fact and conclusions of law.  She states that, while the District Court made "model" efforts to guide Clark through the trial as a *pro se* litigant, "Edythe was hardly afforded such accommodations."  We must again acknowledge the difficulty of fairly and efficiently guiding unrepresented parties through trial proceedings and commend the District Court's efforts to accommodate the parties' needs in this case.  While her appellate counsel again points out that Edythe was silent throughout the proceedings, there is no indication in the record that the court prevented Edythe from presenting a defense.  We have concluded instead that Edythe's failure to participate in the proceedings raises concerns about her competency to stand trial.

¶37    Our review of the record reveals that Edythe was generally not treated as a separate party in many of the pre-trial and trial proceedings.  The court failed to address her competency despite her counsel's request, the Appellees failed to provide her with Rule 10 notice after her counsel withdrew, and she was deemed liable for all of the accident-related damages without actively participating in her own trial.  Appellees argue repeatedly that these issues should have been raised at trial by the parties.  We, however, agree with Edythe's appellate counsel that denying review of these issues would be substantially unjust—"namely, that someone who might have mental health issues, was

17

denied clearly-required statutory notice regarding the proceedings, all while appearing without counsel, be required to raise all of these concerns to the District Court at a trial."

¶38 Because we reverse and remand on Edythe's first two claims, we need not decide whether, independent of those concerns, the conduct of the trial itself violated Edythe's due process rights. *Weidow v. Uninsured Employers' Fund*, 2010 MT 292, ¶ 22, 359 Mont. 77, 246 P.3d 704 ("This Court attempts to avoid constitutional issues whenever possible.") (quotation marks and citation omitted).

¶39 For the foregoing reasons, we reverse the District Court's judgment against Edythe and remand the case for an evaluation of Edythe's need for a conservator and new trial as to Edythe's vicarious liability only.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS

18