

DA 13-0451

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2014 MT 74

IN THE MATTER OF C.S.,

        Appellant.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DN 13-4
Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Alexandra L. Volkerts; Disability Rights Montana; Helena, Montana

        For Appellee:

        Patrick T. Fleming; Fleming & O'Leary, PLLP; Butte, Montana

Submitted on Briefs: February 19, 2014
Decided: March 18, 2014

Filed:

_____
                Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1      C.S. appeals the order of the Second Judicial District Court, Silver Bow County, denying his motion to vacate the court's appointment of Mary Jo Mahoney as his surrogate parent for educational purposes.

¶2      We address the following issues on appeal:

¶3      *1.      Whether C.S.'s claims are moot.*

¶4      *2.      Whether the appointment of Mahoney violated C.S.'s constitutional rights.*

¶5      *3.      Whether the District Court erred in denying C.S.'s motion to vacate the appointment of Mahoney and substitute his foster parent as C.S.'s surrogate parent.*

¶6      *4.      Whether C.S. is entitled to attorney's fees.*

¶7      We reverse the court's order denying C.S.'s motion and remand for consideration of C.S.'s claim for attorney's fees.

## PROCEDURAL AND FACTUAL BACKGROUND

¶8      C.S. is an adult with disabilities who received special education services from the Butte School District (School District) between September 2009 and June 2013.   In March 2012, C.S. turned eighteen.   Shortly after, he ran away from his biological mother's home.  After a determination by the Montana Department of Public Health and Human Services (DPHHS) that foster care was in C.S.'s best interests, DPHHS placed C.S. with S.M. (Foster Father) for foster care services.  C.S. previously had resided with Foster Father at times prior to this placement.

¶9      Following attempts to work with the School District to improve C.S.'s education, Foster Father filed a complaint on behalf of C.S. with the Montana Office of Public

2

Instruction (OPI) in November 2012. The complaint alleged that the School District violated both federal education law under the Individuals with Disabilities Education Act (IDEA) and Montana's special education laws.

¶10 OPI's investigation revealed numerous violations of IDEA, which it included in its final report issued on January 25, 2013. The investigation also raised concerns about C.S.'s ability to make his own educational decisions. OPI stated that, pursuant to federal regulations, an "appropriate individual to represent the educational interests of [C.S.] throughout the period of the child's eligibility under IDEA should be appointed if [he] has reached age of majority, has not been determined to be incompetent, and is determined not to have the ability to provide informed consent with respect to [his] educational program." OPI noted that Montana law does not have a process for appointment of a surrogate parent for those students who have reached the age of majority. It directed the School District to the Montana surrogate parent statute for minor children, and ordered the School District to "promptly attempt to obtain appointment of a surrogate parent, or other judicial appointment for educational purposes, for [C.S.]"

¶11 On behalf of the School District, the Butte-Silver Bow County Attorney filed a request with the District Court for the appointment of a surrogate parent for C.S. on February 20, 2013. The petition requested the appointment of Mary Jo Mahoney. The School District did not serve the petition on C.S. or his Foster Father. On February 25, 2013, the District Court ordered the appointment of Mahoney as C.S.'s surrogate parent. C.S. learned about the appointment when Mahoney attended his individualized education

3

plan (IEP) meeting. Mahoney approved the School District's proposed IEP for C.S. that long had been disputed by C.S.'s Foster Father and attorney. On March 13, 2013, C.S. filed a motion to vacate the appointment of Mahoney and to substitute Foster Father as his surrogate parent. The court denied the request in an order dated June 10, 2013, reasoning that a foster parent "has no statutory preference or priority for appointment as a surrogate parent in the absence of a parent or legal guardian."

## STANDARD OF REVIEW

¶12 We review a District Court's conclusions of law for correctness. *Stewart v. Rice*, 2013 MT 55, ¶ 15, 369 Mont. 203, 296 P.3d 1174. Our review of constitutional questions, such as an alleged violation of due process, is plenary. *Stewart*, ¶ 16.

## DISCUSSION

¶13 *1. Whether C.S.'s claims are moot.*

¶14 The School District argues that C.S.'s claims are moot because, as of June 2013, he "aged out" of the school system and is no longer eligible for education services. C.S. concedes that he is "aged out" of school. He maintains, however, that he has an ongoing interest in the outcome of this case because he is pursuing a separate due process claim against the School District. In that claim, he seeks education to compensate for the School District's failure to provide him with a free appropriate public education (FAPE) as required by IDEA. Thus, he argues that the court's appointment of Mahoney is still a live issue.

4

¶15 Because this Court cannot address a moot question, mootness is a threshold issue that we must resolve before addressing the merits of a case. *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 31, 333 Mont. 331, 142 P.2d 864. A moot question is a question that "existed once but because of an event or happening . . . has ceased to exist and no longer presents an actual controversy." *Serena Vista, LLC v. State Dept. of Nat. Resources & Conserv.*, 2008 MT 65, ¶ 14, 342 Mont. 73, 179 P.3d 510 (internal citation omitted). An appeal may become moot "where by a change of circumstances prior to the appellate decision the case has lost any practical purpose for the parties, for instance where the grievance that gave rise to the case has been eliminated." *In re T.J.F.*, 229 Mont. 473, 475, 747 P.2d 1356, 1357 (1987) (internal citation omitted).

¶16 IDEA vests courts with broad authority to grant "such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C)(iii). One form of relief courts grant under IDEA is compensatory education, which requires a school district to compensate for its past failure to provide a FAPE. "Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of the IDEA." *Parents of Student W. v. Puyallup Sch. Dist.*, 31 F.3d 1489, 1497 (9th Cir. 1994). Such relief may be granted even to students who already have "aged out" of school. *See Phil v. Mass. Dept. of Educ.*, 9 F.3d 184, 190 (1st Cir. 1993) (If the claimant could "prove that the school district denied him his right to an appropriate education under the IDEA . . . he could claim relief in the form of compensatory education, notwithstanding the fact that he is now twenty-seven years old."); *Ferren C. v. Sch. Dist. of Phila.*, 612 F.3d 712, 717-18,

720 (3d Cir. 2010) (Although IDEA limits a school district's obligation to provide a FAPE, individuals over the statutory age limit still may be eligible for compensatory education if the school district failed to provide a FAPE prior to the student aging out.).

¶17 Although C.S. no longer qualifies for special education services from the School District, he maintains an interest in the outcome of this proceeding. His due process complaint is still pending at the administrative level. If successful in that proceeding, C.S. may receive an award of education services and return to the School District. Because Mahoney's position as a surrogate parent vests her with broad authority to "represent [C.S.] in all decisionmaking processes concerning [his] education," her appointment impacts C.S.'s future education possibilities. Section 20-7-462, MCA. This action has not "lost all practical purpose for the parties," and we conclude that the court's refusal to vacate its appointment of Mahoney has not been mooted.

¶18    *2. Whether the appointment of Mahoney violated C.S.'s constitutional rights.*

¶19    C.S. asserts that the School District's petition and the District Court's order appointing Mahoney without notice implicated his constitutional rights to due process, privacy, dignity, and education. The School District argues that C.S. failed to raise this issue below. In his motion to the District Court, C.S. did argue that the School District failed to serve its petition to appoint a surrogate parent, but he did not raise a constitutional argument until appeal. He now argues that we should exercise plain error review of these claims.

6

¶20 We generally do not review issues raised for the first time on appeal. *Stewart,* ¶ 16. We may, however, review "a claimed error not previously raised in the district court [that] affects fundamental constitutional rights where failing to review it may result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the proceedings, or compromise the integrity of the judicial process." *Stewart,* ¶ 16 (internal citation omitted).

¶21 Although C.S. did not receive notice of the School District's petition or the District Court's appointment, the court allowed him to argue for the removal of Mahoney and issued a ruling on the merits of that issue. That issue is now before us on appeal. C.S. fails to demonstrate how the lack of notice below affected his substantial rights in such a way that our failure to review it would result in injustice. Given that we are reviewing the merits of his original claim, we disagree that failure to exercise plain error review of C.S.'s constitutional argument would result in injustice. We therefore decline to consider his constitutional claim.

¶22 *3. Whether the District Court erred in denying C.S.'s motion to vacate the appointment of Mahoney and substitute his foster parent as C.S.'s surrogate parent.*

¶23 Montana is bound by IDEA because of the State's receipt of federal funding under the law. 20 U.S.C. § 1415(a). The Montana Superintendent of Public Instruction is expressly charged with promulgating regulations that "ensur[e] that the requirements of [IDEA] are met . . . ." Section 20-7-403(11), MCA.

¶24 IDEA requires states to appoint an available parent as a surrogate for an adult student with disabilities before turning to another individual. The law reads:

7

If, under State law, a child with a disability who [sic] has reached the age of majority under State law, who has not been determined to be incompetent, but who is determined not to have the ability to provide informed consent with respect to the educational program of the child, the State shall establish procedures for appointing the parent of the child, or if the parent is not available, another appropriate individual, to represent the educational interest of the child throughout the period of eligibility of the child under this subchapter.

20 U.S.C. § 1415(m)(2). Montana law does not outline a procedure for appointing a surrogate for an adult student with disabilities, but § 20-7-461, MCA, directs a school district providing education to a child with a disability to "adopt procedures to assign an individual to act as a surrogate parent for a child with a disability whenever the parents or guardian cannot be identified or, after reasonable efforts, the location of the parents cannot be discovered or if the child is a ward of the state." Both laws have a threshold requirement that a parent be unavailable before another individual is appointed.

¶25 IDEA's definition of a parent includes "a natural, adoptive, or foster parent of a child (unless a foster parent is prohibited by State law from serving as a parent)." 20 U.S.C. § 1401(23)(A). The administrative rules adopted by OPI incorporate the federal law, stating, "Procedures for the appointment of a surrogate parent shall comply with . . . 34 CFR 300.30 . . . ." Admin. R. M. 10.16.3504(1). That regulation allows a foster parent to act as a parent "unless State law, regulations, or contractual obligations with a State or local entity prohibit a foster parent from acting as a parent." 34 C.F.R. 300.30. OPI's administrative rules permit a foster parent to "act as a parent if the natural parents' authority to make educational decisions on the student's behalf has been extinguished under state law and the foster parent: (a) is willing to make the educational decisions

8

required of parents under IDEA; and (b) has no interest that would conflict with the interests of the student." Admin. R. M. 10.16.3504(2).

¶26 The District Court did not look to these definitions or to the regulations, both of which allow a foster parent to act as a parent. Instead, the court relied solely on the language of statutes requiring the appointment of a surrogate parent. The court determined that "the language of both federal and state statute expressly required the School District to consider appointment of a 'parent' or a 'parent or guardian' . . . the statutes make no mention of a 'foster parent.'" The court erred by not applying the federal statutory definition and the applicable federal and state regulations that permit a foster parent to act as a parent under the surrogate parent statutes. These provisions make clear that a foster parent qualifies as a parent under IDEA and Montana's special education laws.

¶27 The dispositive facts are uncontested between the parties. Both parties agree that the appointment of a surrogate parent is necessary because C.S. is unable to provide informed consent about his educational choices. The court found, and it remains undisputed, that C.S.'s biological mother's rights were extinguished when he turned eighteen and that Foster Father is a licensed foster care provider charged with caring for C.S. The School District does not dispute Foster Father's willingness to "make the educational decisions required of parents under IDEA," nor does it assert that he has an "interest that would conflict with the interests of the student." Admin. R. M. 10.16.3504(2). Foster Father qualifies as a parent under the applicable state and federal

law.  Because IDEA requires an available parent to be appointed as the surrogate parent for an adult student, and there is no dispute that Foster Father qualifies, the court erred when it refused to remove Mahoney and appoint Foster Father.  The District Court's order denying C.S.'s motion to remove Mahoney and appoint Foster Father is reversed.

¶28     *4. Whether C.S. is entitled to attorney's fees.*

¶29     C.S. asks that we direct the District Court to reconsider his request for attorney's fees.  In its order denying C.S.'s motion, the court denied his request for attorney's fees "on the basis that he was not the prevailing party."  IDEA authorizes courts, in their discretion, to award reasonable attorney's fees to a prevailing party "in any action or proceeding brought under [IDEA]."  20 U.S.C. § 1415(i)(3)(m).  Because we are reversing the District Court's decision, C.S. is now the prevailing party.  Accordingly, we remand for the court to determine whether an award of attorney's fees is appropriate in this case.

## CONCLUSION

¶30     The District Court's order denying C.S.'s petition to remove Mahoney and appoint Foster Father as C.S.'s surrogate parent is reversed.  We remand the case for the court to enter an order appointing Foster Father as C.S.'s surrogate parent and to consider C.S.'s claim for attorney's fees.

/S/ BETH BAKER

10

We concur:

/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ LAURIE McKINNON