NO.   94-091

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

JAMES M. TROGLIA, JR.,

      Plaintiff and Appellant,

-v-

E. A. BARTOLETTI, et al.,

      Defendants and Respondents.

FILED

AUG 3 0 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: **District** Court of the Fifth Judicial **District**,
In and for the County of Jefferson,
The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

            Ward A. Shanahan, Gough, Shanahan, Johnson & Waterman, Helena, Montana

      For Respondent:

            Edward Beaudette, Anaconda, Montana


            Submitted on briefs: June 30, 1994

                     Decided: August 30, 1994

Filed:

_____
          Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

In a partition action in the District Court of the Fifth Judicial District, Jefferson County, this is an appeal from a property valuation and order allocating the sale proceeds from a public sale of the real property as between the co-tenant parties to the action. We affirm in part and reverse in part.

The issues on review are:

I. Did the District Court err in awarding defendant E. A. Bartoletti $24,450 for his interest in the land and improvements?

II. Did the District Court err in awarding defendants damages for "wrongful exclusion and wrongful deprivation" when the claim was not properly raised by the parties?

III. Did the District Court err in waiving the formal notice of entry of judgment pursuant to Rule 77(d), M.R.Civ.P.?

The parties are tenants in common in the ownership of two patented mining claims, in Jefferson County, Montana, with a total acreage of 41.179 acres.

The property was first leased by James M. Troglia, Sr. and Louis Bartoletti, father of defendant E. A. Bartoletti. It originally included two older structures and also showed evidence of active mining operations. James M. Troglia, Sr. and Louis Bartoletti built a cabin on the property and jointly used it for recreation. In 1958, they purchased the property in equal shares and thereby became tenants in common. They also purchased another unpatented mining property nearby on which they built another dwelling. In 1964, this cabin was destroyed by fire.

2

James M. Troglia, Sr. and Louis Bartoletti began having business problems and defendant E. A. Bartoletti became involved in the disputes. Several lawsuits followed.

In October of 1970, James Troglia, Sr. deeded his half interest in the property to his son, plaintiff James Troglia, Jr. (Troglia) and in December 1971, Louis Bartoletti deeded his half in equal shares to his son defendant E.A. Bartoletti (Bartoletti) and his daughter Mrs. Thelma Casey (Casey) of Great Falls. Casey sold her one-quarter interest in the surface to Troglia for $7,000 in 1990 before the commencement of the present action. Casey retained her mineral rights. As a result, Troglia owned 75% of the surface estate and 50% of the minerals and Bartoletti owned 25% of the surface and 25% of the minerals. Casey owned the remaining 25% of the minerals.

Troglia and Bartoletti disputed the cause of the destruction of a cabin. Attempts by Troglia to settle the dispute and get the cabin rebuilt were unsuccessful. Troglia then notified Bartoletti that he was going to rebuild the cabin himself and that it would be his exclusive property. Bartoletti objected to this plan and stated his right to have the land partitioned.

Troglia proceeded to build a quite sophisticated lodge on a fenced 14.11 acre portion of the property. Troglia repaired the existing fence and also made extensive improvements to the other two older cabins on the combined properties. Troglia also filed a water right on a spring that runs through the property.

Troglia has paid taxes on all of the improvements since 1978.

The county assessed Troglia based on a one-acre "homestead tract" valued as a homesite until the present time. The rest of the property was assessed as grazing land. Troglia, Bartoletti, and Casey have paid taxes on their respective interest in the land.

Troglia eventually filed an action claiming 1) an "ouster" and repudiation of Bartoletti's surface rights in a 14.11-acre portion of the 41.179 acre property, 2) the need for a partition or sale of all of the property, and 3) a request for quiet title in himself against all other persons unknown. Bartoletti filed an answer containing a general and special denial.

The case was tried on February 26, 1992. In its order the court appointed a receiver to appraise and sell the property in the event an agreement between the parties concerning partition could not be achieved. The court granted Troglia a right of first refusal on the same terms and conditions of any bona fide offer. The court amended its order, striking this right of first refusal and directing the receiver that Troglia be compensated for the reasonable value of improvements made by him during his exclusive occupancy of the property. The court also at this time gave specific directions to the receiver for the appraisal and sale of the property.

The receiver did not complete the sale arrangements during the winter of 1992-93. He later requested permission of the court to try to effect a partition by mutual agreement. In June of 1993, he reported that he was unable to accomplish this. On July 28, 1993, the court issued an order directing sale. The property was

4

advertised for sale and bids were accepted. The bids were opened by the court on October 27, 1993 and Troglia's bid of $201,000 was the highest bid received.

On November 5, 1993, Troglia moved the court for disposition of sale proceeds. The court issued an order on January 28, 1994, finding that Bartoletti owned a 25% interest in both the land and the improvements and was owed the sum of $24,450. The court further determined that the reasonable rental value of the property from which Bartolettihad been "wrongfully excluded" equaled $1,000 per year for a total of $16,000. The court then waived the provisions of Rule 77(d), M.R.Civ.P., and made its judgment immediately effective, even though the actual document was not filed until January 31, 1994, and not received by the parties until February 1, 1994. Troglia appeals this January 28, 1994 order of the court. Judgment is stayed pending appeal and the quiet title action remains pending before the District Court.

I.

Did the District Court err in awarding defendants $24,450 for their interest in the land and improvements?

Troglia contends that the District Court was statutorily bound by § 70-29-207, MCA, to separate the value of improvements from the value of the land; instead, the court simply awarded Bartoletti the sum of $24,450 for land and improvements. Troglia contends the court ignored the evidence of valuation and did not base its decision upon any pertinent evidence. Troglia contends that the land was appraised by his appraiser at $30,000, and that Bartoletti

5

is due only $13,000 of that sum. Bartoletti contends that the statute relied upon by Troglia is inapplicable because there was no partition.

Under Tonack v. Montana Bank of Billings (1993), 258 Mont. 247, 854 P.2d 326, our standard of review of the District Court's findings of fact is to determine if they are clearly erroneous, that is if they are supported by substantial evidence, and then to determine if the trial court has misapprehended the effect of the evidence and last to determine whether this Court is left with a firm conviction that a mistake has been made. We evaluate the legal interpretations of a court as to whether those interpretations are correct. Doting v. Trunk (1993), 259 Mont. 343, 856 P.2d 536.

Section 70-29-207, MCA, cited by Troglia provides:

> Allotment of shares of land--improvements. In all cases the court shall direct the referees, in making partition of land, to allot the share of each of the parties owning an interest in the whole or in any part of the premises sought to be partitioned and to locate the share of each cotenant so as to embrace as far as practicable the improvements made by such cotenantupon the property, and the value of the improvements made by the tenants in common must be excluded from the valuation in making allotments, and the land must be valued without regard to such improvements, in case the same can be done without material injury to the rights and interest of the other tenants in common owning such land. (Emphasis added.)

The wording of the statute makes it applicable to cases in which the court partitions land. The court did not do that in the present case, and therefore, the court was not bound by the statute's directive to evaluate the land separately from the improvements upon it.

6

In its final order, the District Court issued the following findings:

> 2. The Court finds that the aggregate value of the property is $201,000. Allocation of the respective interests of the co-tenants must necessarily be based on that value. The Receiver's appraisal was of little help to the Court in view of 24 bids ranging from a low of $7,000 to the high of $201,000. The Court personally inspected the property, and from that inspection finds and agrees with the Plaintiff in his appraisal and his bid pursuant thereto.
>
> . . .
>
> 4. The Court finds, based on Plaintiff's $201,000 appraisal, that Defendants' 25% interest in the land and improvements to be the sum of $24,450.

Twenty-four bids for the property were presented to the court. They showed a broad variation in sums that people were willing to pay for the property. Because of this great range, the judge personally inspected the property. And although he has not provided us with a detailed analysis of how he reached the final amount, we cannot say that his findings here are clearly erroneous.

Plaintiff's appraiser valued the land at $30,000 and the lodge at $103,000. Plaintiff's bid for land and improvements was $201,000. As pointed out by Bartoletti, by valuing Bartoletti's interest at $24,450, the District Court set a value of $97,800 on the land and a value on the improvements made by plaintiff Troglia of $103,200. While it would have been helpful to have a more precise statement by the District Court, we conclude that the court had the right to disregard the appraiser's value and to consider other credible evidence, and we further conclude that he was not clearly erroneous in valuing the defendant Bartoletti's interest at $24,450.

7

We hold that the court did not err in awarding $24,450 to the defendant Bartoletti for his interest in the land and improvements.

## II.

Did the District Court err in awarding defendants damages for "wrongful exclusion and wrongful deprivation" when the claim was not properly raised by the parties?

Troglia argues that the District Court erred in finding a claim for relief based upon "wrongful exclusion and wrongful deprivation." Such claims, contends Troglia, were required to be plead under Rule 13(a) of the M.R.Civ.P. which requires that any claim against the same parties arising from the same incident and not requiring the presence of a third party, must be plead in defendant's answer to the original charges. Troglia asserts that the first mention of the aforementioned claims came in Defendant's Memorandum Regarding Disposition of Proceeds filed December 3, 1993. Further, Troglia argues that the court held no hearing, and no evidence was presented, with respect to the proper amount of damages arising from these claims.

Bartoletti argues that he did seek equitable relief from the court and that such a request enables the District Court to award any and all relief available under the court's equitable jurisdiction. Bartoletti further argues that § 70-29-209, MCA, specifically allows for a ruling in equity.

Bartoletti cites the following sentence from the prayer for relief found in his Answer as asking for an equitable settlement:

> 2.  That a partition of the Viola and Jettie Pearl mining claims be made equitably by this Court according

8

to the interests held by the parties. In this sentence the word "equitably" modifies the word "partition." Bartoletti asked for a fair partition in this sentence, he did not request any equitable award that the court can make--nor do we interpret the sentence as having such a broad meaning.

Next, Bartoletti argues that § 70-29-209, MCA, requires that the **court** make a decision in equity concerning the property. The section cited by Bartoletti concerns what the court **"may"** do if the court cannot make an **"equal"** partition. The facts of this **case** present us with a situation in which the court could effect no partition of any kind. Thus, this statute which defines a particular set of guidelines to be applied in circumstances when the court is making a partition is not applicable and is not precedent for the case before us.

Troglia argues that Bartoletti has not filed a proper counterclaim concerning "wrongful exclusion and wrongful deprivation" according to the dictates of Rule 13(a), **M.R.Civ.P.** This rule states:

> **Compulsory counterclaims.** A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. . . .

A claim for wrongful exclusion or wrongful deprivation is a claim against the other party to the litigation arising out of the same incident and not requiring a third party for the adjudication. It

9

is, therefore, a compulsory counterclaim. A close review of the Answer indicates that no counterclaim was made. If a compulsory counterclaim is not specifically plead, defendant loses the right to bring it up later. Julian v. Matson (1985), 219 Mont. 145, 710 P.2d 707.

We conclude that because Bartoletti did not raise this claim in his answer, he cannot raise it in subsequent documents pursuant to Rule 13(a), M.R.Civ.P. Therefore, we hold that the District Court erred in awarding defendant damages for "wrongful exclusion and wrongful deprivation" when the claims were not properly raised by the parties. We reverse the court's holding on this issue and vacate the court's award of $16,000 to Bartoletti for "wrongful exclusion and wrongful deprivation."

## III.

Did the District Court err in waiving the formal notice of entry of judgment pursuant to Rule 77(d), M.R.Civ.P.?

The District Court's ruling dated January 28, 1994, states:

> This order shall constitute a judgment in favor of the Defendants and against the Plaintiff and shall be effective this date without formal notice of entry thereof.

Rule 77(d), M.R.Civ.P., provides:

> (d) Notice of Entry of Judgment Served. Within 10 days after entry of judgment or an order in an action in which an appearance has been made, notice of such entry, together with a copy of such judgment or order or general description of the nature and amount of relief and damages thereby granted, shall be served by the prevailing party upon all parties who have made an appearance, but any other party may in addition serve a notice of such entry in the manner provided in Rule 5 for the service of papers.

10

The ruling was filed with the clerk on January 31, 1994, and received by plaintiff on February 1, 1994.

Troglia argues that the court should have followed the rule, but admits that the court's error was harmless. While we agree that what happened in this instance was harmless error, we point out that a party's allotted time in which to file an appeal does not begin to run until the notice of entry of judgment has been served. In re Marriage of Robertson (1989), 237 Mont. 406, 773 P.2d 1213. We therefore emphasize that the district courts cannot eliminate the necessity for the prevailing party's service of notice of entry of judgment.

While the court's order was incorrect, we hold the action did not rise to the level of reversible error.

We affirm the award of $24,450 and reverse the award of $16,000 and remand for entry of appropriate judgment.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

11