FILED

10/07/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0037

DA 25-0037

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 228N

GEORGE W. BARCE,

      Plaintiff and Appellant,

  v.

JUDI C. FILLER,

      Defendant and Appellee.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DV-21-211
Honorable Molly Owen, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Skyler C. Bagley, Matthew H. O'Neill, O'Neill & Bagley Law Office,
PLLC, Polson, Montana

      For Appellee:

          Trent Baker, Datsopoulos, MacDonald & Lind, P.C., Missoula,
Montana

Submitted on Briefs:  August 13, 2025

Decided:  October 7, 2025

Filed:

          _____
                        Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 George Barce appeals the December 16, 2024 Findings of Fact, Conclusions of Law and Order of the Montana Twentieth Judicial District Court, Lake County, modifying the court-appointed Referees' partition plan by adopting an alternate partition plan to partition lakefront property on Flathead Lake that he owned as tenants in common with his sister, Judi Filler. We affirm.

¶3 In 2003, Barce and Filler inherited from their mother a parcel of land on and around Flathead Lake (the Property), as tenants in common. The Property includes 1.29 acres and roughly 50 feet of lake frontage. Over time, much of the land that surrounds the Property that the parties' ancestors owned was subdivided and sold off. The Property is the last owned by family members on Flathead Lake.

¶4 For several years, Barce and Filler shared the Property without conflict. Filler seasonally resided in a trailer home along the southeastern border of the Property for more than 20 years. In 2013, with Filler's permission, Barce built his permanent residence in the northwestern corner of the Property at a location he chose. During construction of his home, Barce installed a well, a drain field, and a septic tank sized for two dwellings with the understanding they would eventually be shared with Filler. The parties shared the

2

expenses for property taxes, insurance, installation of the well and drain field, repairs and maintenance of a dock, and improvements to the dock and boat ramp. They shared use of the lake shore.

¶5 About a year before commencing this action, Barce approached Filler with a draft tenancy in common agreement that would address concerns regarding the water, septic, and lake access and insisted that Filler sign it. Barce claims that he also attempted to get Filler to sign an agreement that would allow him to build a garage. Filler denies ever seeing an agreement that would allow Barce to build a garage and asserts she never signed a tenancy in common agreement. As a result, on November 17, 2021, Barce commenced this action with the Montana Twentieth Judicial District Court, Lake County, under the Montana Uniform Partition of Heirs Property Act (UPHA), seeking a partition in kind of the Property.

¶6 On July 18, 2022, the District Court appointed three Referees agreed upon by Barce and Filler to determine equitable apportionment of the Property in compliance with §§ 70-29-202, -211, and -405, MCA. On October 5, 2022, after interviewing Barce and Filler and personally inspecting the property, the Referees filed their Report which included their Recommended Plan for partition in kind. The Recommended Plan divided up the Property into two equal plots. Barce's lot would include the northern part of the Property where his house and the well are located and the west half of the lake shore. Barce's lot would also include a 12-foot strip of land connecting the two and providing access to the lake shore. Filler's lot would include the east half of the lake shore and the eastern portion of the Property where the septic drain field and replacement drain field serving both lots is

3

located. The lake shore was to be encumbered by mutual easements requiring shared use of the lake shore and frontage.

¶7 On November 9, 2022, Barce filed an unopposed motion for abeyance to give the parties 60 days to work out a settlement. On December 10, 2022, Referee Marc Carstens (Referee Carstens) created an Alternative Partition to address Barce's concerns about lake access under the Recommended Plan. The Alternative Partition maintained the equal size of the parties' parcels at .616 acres each. It included the same equally split ownership of the lakefront and reciprocal easements on each half. The Alternative Partition moved the strip of land connecting Barce's residence to the lake front from the western boundary of the property to the eastern boundary, in an attempt to resolve Barce's concern about the location, navigability, and cost of building a new path. However, the remainder of the Referees did not prefer the Alternative Partition due to potential roadway congestion on Hydeaway Road, which services ten other lots, and because they believed it could possibly lead to future parking and access disputes between Barce and Filler.

¶8 On January 6, 2023, Barce objected, pursuant to § 70-29-413(1), MCA, to the Referees' Recommended Plan that the Property be partitioned in kind with reciprocal easements on the grounds that the Property could not be partitioned fairly without prejudicing him. For the first time, pursuant to §§ 70-29-402 and -410(4), MCA, Barce requested a partition by sale and an appraisal of the Property. On January 30, 2023, pursuant to § 70-29-412(1), MCA, Filler objected and requested the court adopt the Referees' Recommended Plan. The court ordered an appraisal on September 20, 2023. On October 25, 2023, the court notified the parties that the appraisal value of the property was

4

$1,600,000.  On December 18, 2023, pursuant to § 7-29-411, MCA, the District Court issued an order granting Filler the opportunity to buy Barce's interest in the property.  On February 26, 2024, Filler filed notice that she declined to exercise her right to buy Barce out under § 70-29-411(21), MCA, and again requested the court adopt the Referees' Recommended Plan.

¶9      On February 29, 2024, Barce requested a hearing on his objections to the Referees' Recommended Plan.  The District Court held a hearing on October 29, 2024.  Barce and Filler both testified, presented testimony from witnesses, including the Referees and other experts, and offered several exhibits.  They testified regarding their historic use of the Property, its sentimental value and importance to them, noting the Property is the last owned by family members on Flathead Lake.  They both testified that they shared the Property for many years without conflict, they used to share coffee regularly, their families would share holiday meals and potlucks on the Property, and they would assist each other with errands.

¶10     The parties presented conflicting testimony regarding the exact nature, extent, cause, and timing of the conflict between the parties.  Barce claimed that, in recent years, Filler and her guests continually parked their vehicles in a spot on the Property that blocked him and his guests from accessing the boat ramp and that Filler's guests verbally harassed them when going down to the lake.  Filler claims Barce left his watercrafts and even an RV in the spot by her trailer where she and her guests parked for years, forcing Filler and her guests to park in the area blocking access to the boat ramp.  Filler also claims that, after commencing this action, Barce put cameras up on the Property facing her trailer.  Both

5

parties testified that, at some point prior to commencing this action, Barce approached Filler with a draft tenancy in common agreement and insisted Filler sign it. Barce claims that he also attempted to get Filler to sign an agreement that would allow him to build a garage. Filler claims that she did not ever see an agreement that would allow Barce to build a garage and that she did not sign the tenancy in common agreement over concerns regarding the water, septic, and lake access.

¶11    Barce and Filler presented expert testimony about the cost of constructing a road to provide boat ramp access for Barce. Barce's expert provided testimony that the estimated cost would be $133,150. Filler presented expert testimony from Referee Carstens who presented his analysis of the feasibility of constructing a useable roadway without the need for a retaining wall and other expenses set forth by Barce's expert. Filler then presented expert testimony from Dan Eastman (Eastman) regarding his expertise in road construction in the area and estimated that the cost to build the road would be $30,000.

¶12    Referee Carstens also testified regarding the Alternative Partition. He testified to the configuration of the Alternative Partition and that the Referees did not prefer it out of concern of additional traffic to Hydeaway Road. Eastman testified that the cost to construct the road on the Alternative Partition would be $15,000. Barce testified that he had not seen the Alternative Partition, did not agree with it, did not intend to build a road in either location, and would not agree to any partition in kind.

¶13    Barce then presented expert testimony from Cindy Lanier (Lanier), a licensed real estate broker, regarding the value of his lot. She testified that the value of his lot was $553,500. Filler presented expert testimony from Referee Jeff Strozzi (Strozzi) regarding

6

the values of Barce's Lot, Filler's lot, and the Property. Strozzi testified he was dubious of Lanier's valuation of Barce's lot for several reasons. He testified that Lanier did not provide sufficient information to determine whether the combined value of Barce's lot and Filler's lot would be less than the value of the Property set forth in the court-ordered appraisal. He also testified that the proper way to determine whether the combined value of Barce's lot and Filler's lot would be less than the value of the Property would be to have each lot appraised. Strozzi testified that he had not conducted the necessary appraisals but, based on general rules of appraisals, he would be surprised if the combined value of the parties' lots was less than the value of the Property as a whole.

¶14 In the District Court's Findings of Fact, Conclusions of Law and Order, the court concluded that, considering the Referees' Report, the testimony, and other evidence presented at the hearing, the Property could be practicably divided between Barce and Filler, and that the Alternative Partition was fair to both parties and would not result in great prejudice to either party. The District Court confirmed the Referees' Report recommending partition in kind but modified it by adopting the Alternative Partition.

¶15 On appeal, Barce argues that (1) adopting the Alternative Partition resulted in an unconstitutional taking of his property; (2) his procedural due process rights were violated during the District Court proceedings; (3) the District Court's Conclusions of Law were unsupported by substantial evidence; and (4) the District Court's Findings of Fact were clearly erroneous. Filler argues that (1) the District Court properly adopted the Alternative Partition; (2) the District Court's imposition of easements did not exceed its authority; (3) the District Court did not violate Barce's constitutional rights to due process; and

7

(4) Barce's constitutional claims are barred because he did not raise them in the lower court.

¶16 When the referees in a partition action submit their report to the district court, the court "may confirm, modify, or set aside the report. . . ." Section 70-29-212, MCA. This Court reviews the district court's findings of fact in a partition action to determine whether they are clearly erroneous. *Troglia v. Bartoletti*, 266 Mont. 240, 244, 879 P.2d 1169, 1171 (1994). A finding is clearly erroneous if it is not supported by substantial evidence, if the district court misapprehended the effect of the evidence, or if a review of the evidence leaves this Court with the firm conviction that a mistake has been made. *Troglia*, 266 Mont. at 244, 879 P.2d at 1171. We review the district court's conclusion of law to determine whether they are correct. *Flood v. Kalinyaprak*, 2004 MT 15, ¶ 14, 319 Mont. 280, 84 P.3d 27. Our review of whether a party was afforded due process is plenary. *In re Estate of Boland*, 2019 MT 236, ¶ 18, 397 Mont. 319, 450 P.3d 849.

**Partition in Kind under Montana Law**

¶17 Montana law favors partition in kind unless doing so would result in "great prejudice to the cotenants as a group." Section 70-29-412(1), MCA. In determining whether great prejudice exists, the district court must consider the non-exclusive factors in § 70-29-413(1), MCA. Additionally, the court has statutory authority to "confirm, change, modify, or set aside" the referees' report. Section 70-29-212(1), MCA.

¶18 The District Court's adoption of the Alternative Partition comports with these directives. Equal acreage and equal lake frontage were preserved. The Referees testified that partition was practicable and that the aggregate value of the resulting parcels would

8

likely equal or exceed the value of the undivided whole. The Alternative Partition simply adjusted the access corridor to resolve a practical concern.

¶19 Montana precedent confirms the District Court's equitable authority. In *Kellogg v. Dearborn Info. Servs., LLC*, 2005 MT 188, ¶ 13, 328 Mont. 83, 119 P.3d 20, this Court affirmed that courts may impose equitable servitudes, including easements, as "owelty" to effectuate a fair partition. Similarly, *Hughes v. Hughes*, 2013 MT 176, ¶¶ 30, 42, 370 Mont. 499, 305 P.3d 772, upheld the imposition of a water easement as part of a partition, recognizing the trial court's broad equitable powers. Here, reciprocal easements for shared wells, drain fields, and shoreline access fall squarely within those precedents.

¶20 Barce's reliance on dictionary definitions of "partition" and out-of-state authority emphasizing exclusive possession is misplaced. Montana law, unlike some jurisdictions, expressly recognizes that reciprocal easements are permissible instruments to avoid great prejudice and to carry out the statutory preference for partition in kind. *See LeFeber v. Johnson*, 2009 MT 188, ¶ 35, 351 Mont. 75, 209 P.3d 254 (upholding equitable adjustments tailored to preserve fairness in partition). Thus, the District Court's order is consistent with both statute and controlling precedent.

**Due Process Claims**

¶21 Barce contends that adoption of the Alternative Partition without additional notice violated his right to due process. This claim is not supported by the record. Due process requires notice and an opportunity to be heard, appropriate to the nature of the case. *Britton v. Brown*, 2013 MT 30, ¶ 28, 368 Mont. 379, 300 P.3d 667.

¶22 The record demonstrates that Barce received the Alternative Partition in 2022, referenced it in his filings, and knew it was listed as an exhibit for the evidentiary hearing. He examined witnesses regarding the Alternative Partition at the October 2024 hearing and did not request a continuance. On these facts, the requirements of notice and opportunity to be heard were satisfied.

¶23 Barce cites municipal "takings" cases such as *Knight v. City of Billings*, 197 Mont. 165, 642 P.2d 141 (1982), and *Knight v. City of Missoula*, 252 Mont. 232, 827 P.2d 1270 (1992), to argue that the imposition of reciprocal easements deprived him of due process. Those authorities are distinguishable. They addressed municipal police-power restrictions on private property owners, not equitable servitudes imposed between cotenants as part of a statutory partition proceeding. Here, the servitudes were imposed pursuant to §§ 70-29-212 and -412, MCA, and consistent with Montana partition precedent such as *Kellogg* and *Hughes*. The constitutional concerns animating the *Knight* decisions are not present in this context.

**District Court's Findings Supported by Substantial Evidence**

¶24 Findings of fact are reviewed for clear error, and we will not substitute our judgment for that of the district court where substantial credible evidence supports the findings. *LeFeber*, ¶¶ 18-19. Substantial evidence supports the District Court's determination that the Alternative Partition was practicable and equitable.

¶25 The Referees testified that the Alternative Partition provided a shorter, more feasible, and cost-effective access route, and that both parcels could continue to be used for residential purposes. They also testified that the aggregate value of the divided parcels

would likely equal or exceed the value of the property as a whole. Barce's expert did not perform a dual-parcel valuation and relied on a methodology the Referees found unreliable. The evidence further showed that the parties had shared the well, septic, and shoreline for years, demonstrating that reciprocal easements were workable and fair.

¶26 This evidence supports each of the statutory factors under § 70-29-413(1), MCA, including practicability, aggregate value, lawful use and harm, and the parties' contributions and improvements. The District Court's findings are therefore supported by substantial credible evidence and are not clearly erroneous.

**Barce's Claims are Not Subject to Plain Error Review**

¶27 Appellant raises constitutional theories of "takings" and lack of due process that were not presented to the District Court. As a general matter, issues not raised below are waived on appeal. *Kellogg*, ¶ 15. This Court will exercise plain error review only when failing to do so would result in a manifest miscarriage of justice, compromise the integrity of the judicial process, or leave unsettled fundamental rights.

¶28 Here, no such circumstances exist. Reciprocal easements are well-established equitable tools in Montana partition practice. *Kellogg*, ¶ 13; *Hughes*, ¶ 42. Their use does not implicate novel constitutional concerns or threaten fundamental fairness. Because the District Court acted within its statutory authority and consistent with precedent, there is no basis for plain error review. Barce's unpreserved constitutional arguments are therefore waived.

¶29 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents

11

no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶30     Affirmed.

/S/ KATHERINE M BIDEGARAY

We Concur:

/S/ CORY J. SWANSON
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE